BLUM, COMMISSIONER, DEPARTMENT OF SOCIAL
SERVICES OF NEW YORK *v.* BACON ET AL.

No. 81–770.  Argued April 28, 1982—Decided June 14, 1982

MARSHALL, J., delivered the opinion for a unanimous Court.

*Robert S. Hammer*, Assistant Attorney General of New York, argued the cause for appellant. With him on the brief were *Robert Abrams*, Attorney General, and *Shirley Adelson Siegel*, Solicitor General.

*Martin A. Schwartz* argued the cause for appellees. With him on the brief was *Eileen R. Kaufman*.

JUSTICE MARSHALL delivered the opinion of the Court.

New York has established an Emergency Assistance Program that receives substantial federal funding under Title IV–A of the Social Security Act (Act), 42 U. S. C. § 603(a)(5). The program excludes recipients of Aid to Families with Dependent Children (AFDC) from emergency assistance in the form of cash. It also excludes public assistance recipients (including AFDC recipients) from reimbursement for lost or stolen grants, even though it provides such reimbursement to other public benefit recipients. The United States Court of Appeals for the Second Circuit held that New York's treatment of AFDC recipients is not inconsistent with the federal Act and regulations but violates the Equal Protection Clause. Because we conclude that the New York law is invalid under the Act, we affirm without reaching the equal protection issue.

I

Appellee Jeanne Bacon has two minor children and depends entirely on an AFDC grant to support her family. On June 1, 1977, while she was shopping, her wallet and food stamps were stolen. She promptly reported the theft to the police and to the New York Department of Social Services (DSS). She requested emergency assistance (EA) under the State's federally funded Emergency Assistance Program, explaining that she had no money to purchase food and other essential items for her household for the month. DSS denied her request on the basis of a recent state law which precludes the furnishing of any cash EA to persons receiving or eligible

for AFDC, N. Y. Soc. Serv. Law §§ 350–j(2)(c) and (3) (McKinney Supp. 1981) (the "no-cash" provision), or of EA in any form to replace a lost or stolen public assistance grant, including an AFDC grant. § 350–j(2)(e) (the "loss-or-theft" provision).[1] Appellee Gertrude Parrish suffered a similar fate. An AFDC mother, she lost her food and AFDC funds when her apartment was broken into and ransacked. She applied for EA, and DSS denied her request on the same basis as it denied relief to appellee Bacon. The other named appellees, Linda Selders and Freddie Mae Goodwine, also

---

[1] New York Soc. Serv. Law § 350–j (McKinney Supp. 1981) provides in pertinent part:

"2. For purposes of this section, the term 'emergency assistance' means aid, care and services authorized during a period not in excess of thirty days in any twelve month period to meet the emergency needs of a child or the household in which he is living, in the following circumstances:

"(a) where the child is under twenty-one years of age; and

"(b) the child is living with, or within the previous six months has lived with, one or more persons specified in subdivision b of section three hundred forty-nine of this chapter; and

"(c) *in cases of applications for grants of cash assistance, such child or such household is not categorically eligible for or receiving aid to dependent children;* and

"(d) such emergency needs resulted from a catastrophic occurrence or from a situation which threatens family stability and which has caused the destitution of the child and/or home; and

"(e) such occurrence or situation could not have been foreseen by the applicant, was not under his control, *and, in the case of a person receiving public assistance, did not result from the loss, theft or mismanagement of a regular public assistance grant;* and

"(f) the emergency grant being applied for will not replace or duplicate a public assistance grant already made under section one hundred thirty-one-a of this chapter.

"3. Emergency assistance to needy families with children shall be provided to the extent of items of need and services set forth in sections one hundred thirty-one and one hundred thirty-one-a of this chapter . . . . *Such emergency assistance, but not including cash grants, may be furnished to a family eligible for aid to dependent children only in the form of emergency services,* and so long as federal aid remains available, for emergency fuel grants in the form of vendor restricted payments" (emphasis added).

were denied EA after they cashed their AFDC checks and suffered the loss of their money.[2]

Appellees brought this class action to enjoin enforcement of the state law insofar as it denies EA pursuant to the no-cash provision and the loss-or-theft provision.[3] Appellees argued that the law conflicts with the Act and violates equal protection because it arbitrarily discriminates against AFDC recipients: it provides cash EA to all eligible recipients other than AFDC recipients, and provides EA for lost or stolen public benefit grants to all public benefit recipients (such as recipients of social security and Supplemental Security In-

---

[2] The record indicates that appellees have standing to challenge the no-cash as well as the loss-or-theft provision. In the case of appellees Bacon, Parrish, and Goodwine, DSS purported to rely on the loss-or-theft provision in denying EA. However, Parrish was denied EA for lost food as well as lost money. The no-cash provision, not the loss-or-theft provision, would appear to justify denial of EA for the lost food, since that loss did not result from the theft of her public assistance *grant.*

In the case of appellee Selders, DSS denied EA for her lost cash pursuant to an administrative memorandum that outlines both the no-cash and the loss-or-theft exclusions for AFDC recipients. App. 34a–37a, 51a. It is therefore unclear which exclusion the State purported to rely upon in denying assistance. However, Selders lost a food stamp voucher as well as the cash from her AFDC grant. DSS refused to provide the cash equivalent of the voucher. Although DSS replaced the voucher, Selders was unable to make use of the replacement because she had no cash. *Bacon* v. *Toia,* 437 F. Supp. 1371, 1376–1377 (SDNY 1977). Accordingly, it was the State's no-cash rule that prevented her from obtaining effective EA. *Id.,* at 1384–1385. Selders alone was denominated a representative of the sub-class of plaintiffs challenging the no-cash rule. *Id.,* at 1381.

In light of these facts and appellant's concession that DSS relied upon both the no-cash and the loss-or-theft provisions in denying assistance, Brief for Appellant 6–7; Tr. of Oral Arg. 4, 17, we conclude that appellees have standing to challenge both provisions.

[3] Appellees also sought to enjoin enforcement of the statutory provision denying replacement or duplication of a public assistance grant already made. N. Y. Soc. Serv. Law § 350–j(2)(f) (McKinney Supp. 1981). They no longer seek relief with respect to that provision because the District Court determined that the provision does not preclude EA in the event of a true emergency. *Bacon* v. *Toia,* 493 F. Supp. 865, 875 (SDNY 1980).

come) other than those on public assistance (including AFDC recipients).

The United States District Court for the Southern District of New York granted summary judgment in favor of appellees on the ground that the state provisions impermissibly narrowed the eligibility standards imposed on state EA programs by § 406(e) of the Act, 42 U. S. C. § 606(e),[4] and were thus invalid under the Supremacy Clause. *Bacon* v. *Toia,* 437 F. Supp. 1371 (1977). The United States Court of Appeals for the Second Circuit affirmed. *Bacon* v. *Toia,* 580 F. 2d 1044 (1978). Shortly thereafter, this Court decided *Quern* v. *Mandley,* 436 U. S. 725 (1978), in which we held that § 406(e) imposes permissive, not mandatory, standards on participating States. The Court of Appeals granted a motion for rehearing, vacated the judgment of the District Court, and remanded the case for further consideration in

---

[4] Section 406(e) of the Act provides in part:

"(1) The term 'emergency assistance to needy families with children' means any of the following, furnished for a period not in excess of 30 days in any 12-month period, in the case of a needy child under the age of 21 who is . . . living with any of the relatives specified in subsection (a)(1) of this section in a place of residence maintained by one or more of such relatives as his or their own home, but only where such child is without available resources, the payments, care, or services involved as necessary to avoid destitution of such child or to provide living arrangements in a home for such child, and such destitution or need for living arrangements did not arise because such child or relative refused without good cause to accept employment or training for employment—

"(A) money payments, payments in kind, or such other payments as the State agency may specify with respect to, or medical care or any other type of remedial care recognized under State law on behalf of, such child or any other member of the household in which he is living, and

"(B) such services as may be specified by the Secretary;

"but only with respect to a State whose State plan approved under section 602 of this title includes provision for such assistance.

"(2) Emergency assistance as authorized under paragraph (1) may be provided . . . to migrant workers with families in the State or in such part or parts thereof as the State shall designate." 81 Stat. 893.

light of *Quern*. On remand, the District Court changed its prior decision and held that the New York law was not inconsistent with the federal Act. In a subsequent opinion, the District Court invalidated the no-cash provision as a violation of equal protection but upheld the loss-or-theft provision. *Bacon* v. *Toia*, 493 F. Supp. 865 (1980). On the second appeal, the Court of Appeals agreed with the District Court that our decision in *Quern* foreclosed a finding that the law violates the Supremacy Clause. The Court of Appeals concluded, however, that both the no-cash and loss-or-theft provisions violate equal protection. *Bacon* v. *Toia*, 648 F. 2d 801 (1981). We noted probable jurisdiction. 454 U. S. 1122.

## II

Where a party raises both statutory and constitutional arguments in support of a judgment, ordinarily we first address the statutory argument in order to avoid unnecessary resolution of the constitutional issue. See *Califano* v. *Yamasaki*, 442 U. S. 682, 692–693 (1979); *Hagans* v. *Lavine*, 415 U. S. 528, 543 (1974).[5] We conclude that this case may be resolved

---

[5] Appellant argues that the statutory issue is not properly before us. It is well accepted, however, that without filing a cross-appeal or cross-petition, an appellee may rely upon any matter appearing in the record in support of the judgment below. See *Massachusetts Mutual Life Ins. Co.* v. *Ludwig*, 426 U. S. 479 (1976) *(per curiam); Dayton Board of Education* v. *Brinkman*, 433 U. S. 406, 419 (1977); see also R. Stern & E. Gressman, Supreme Court Practice 478 (5th ed. 1978). Moreover, the statutory issue was raised and decided in both the District Court and the Court of Appeals.

Appellant also asserts that the appellees were required to file a cross-appeal because they seek to modify the judgment below. Acceptance of the appellees' statutory argument will allegedly result in such a modification because "the injunction granted below on the basis of constitutional right would be modified to one based upon statute or regulation." Reply of Appellant to Motion to Affirm 8. Appellant cites no authority for this novel view that an affirmance which does not alter the relief ordered in the judgment below "modifies" the judgment simply because the affirmance rests on a different legal basis than the court below adopted.

on statutory grounds. As we explain below, the New York no-cash and loss-or-theft rules conflict with valid federal regulations promulgated by the Secretary of Health, Education, and Welfare (Secretary) (now the Secretary of Health and Human Services) which proscribe inequitable treatment under the EA program. Thus, New York's rules are invalid under the Supremacy Clause.

## A

Before reviewing the federal regulations that we find to be dispositive of this case, we first address appellant's claim that reliance on the Act is foreclosed by our decision in *Quern* v. *Mandley*, *supra*. In that case, we carefully reviewed the nature and scope of the EA program and examined one aspect of its relationship to the AFDC program.[6] Under Title IV–A of the Act, state public assistance plans approved by the Secretary are eligible for federal financial assistance. AFDC is a major categorical aid program funded under the Act—indeed, it is "the core of the Title IV–A system." *Id.*, at 728. States are required, as a condition of federal funding under the AFDC program, to make assistance available to all persons who meet statutory eligibility criteria. *Id.*, at 740; 42 U. S. C. §§ 602(a)(10), 606(a). The EA program is a supplement to such categorical assistance programs as AFDC. It permits federal reimbursement to States which choose to provide for temporary emergency assistance in their Title IV–A plans. 42 U. S. C. § 603(a)(5). In contrast to AFDC, the EA program establishes much broader eligibility standards and is not limited to persons eligible for AFDC. 42 U. S. C. § 606(e).

Plaintiffs in *Quern* made the broad claim that a State participating in the federal EA program may not limit eligibility for EA more narrowly than the federal eligibility standards in § 406(e). The state plan at issue provided emergency as-

---

[6] For a general discussion of the EA and AFDC programs, see *Quern* v. *Mandley*, 436 U. S., at 728–729, 735–736, 739, 742–743.

sistance only to certain AFDC families who were without shelter and to applicants presumptively eligible for AFDC who were in immediate need of clothing or household furnishings. We rejected the plaintiffs' broad claim and held that unlike the AFDC program, § 406(e) establishes only permissive, not mandatory, eligibility standards.

*Quern* did not address the statutory issue before us today—whether the complete and automatic exclusion of AFDC recipients from a State's EA program is inconsistent with the Act and applicable regulations. The Court had no occasion to consider the question, since the EA program in that case included *only* AFDC recipients. In addition, the only pertinent federal regulations in *Quern* undermined the plaintiffs' claims and supported the State's rules. See 436 U. S., at 743–744, n. 19; 45 CFR § 233.120 (1981). Here, on the other hand, the Secretary has promulgated a regulation inconsistent with New York's no-cash and loss-or-theft rules. See 45 CFR § 233.10 (1981); *infra*, at 139–142.[7] In short, although we emphasized in *Quern* that a State retains considerable flexibility in determining which emergencies to cover under its EA plan, we hardly suggested that the Secretary had been stripped of all authority to review a plan that arbitrarily or inequitably excluded a class of recipients.

## B

The Secretary, who is charged with administering federal funding for EA under the Act, has promulgated the following regulation applicable to state plans under Title IV–A, including EA programs:

> "(a) *State plan requirements.* A State plan under title I, IV–A, X, XIV, or XVI, of the Social Security Act must:

---

[7] In a footnote, the Court reported that some States have narrowed eligibility for EA programs by excluding AFDC recipients if the emergency need is one theoretically covered by the basic assistance grant. *Id.*, at 739–740, n. 16. This descriptive statement is not, of course, an expression of opinion, much less a holding, with respect to the issue before us.

"(1) Specify the groups of individuals, based on reasonable classifications, that will be included in the program, and all the conditions of eligibility that must be met by the individuals in the groups. The groups selected for inclusion in the plan and the eligibility conditions imposed must not exclude individuals or groups on an arbitrary or unreasonable basis, and must not result in inequitable treatment of individuals or groups in the light of the provisions and purposes of the public assistance titles of the Social Security Act." 45 CFR § 233.10 (1981).

The Secretary has also issued regulations exclusively addressed to the EA program. 45 CFR § 233.120 (1981).[8]

On the authority of these regulations, the Secretary has specifically required the inclusion of AFDC recipients in any EA program, and has disapproved New York's EA plan because it excludes AFDC recipients as a class. Shortly after this Court's decision in *Quern,* the Office of Family Assistance of the Social Security Administration issued Action Transmittal SSA–AT–78–44 (OFA) addressed to state agencies administering approved public assistance programs. The Transmittal explains that after *Quern,* "States remain free, under Federal policy to develop their own definition of

---

[8] These regulations were adopted pursuant to § 1102 of the Act, 42 U. S. C. § 1302, which provides the Secretary with authority to "make . . . such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which [he] is charged under this chapter." We have described this provision as creating "broad rule-making powers." *Thorpe* v. *Housing Authority,* 393 U. S. 268, 277, n. 28 (1969). The Secretary has also argued that 45 CFR § 233.10(a)(1) (1981) is authorized pursuant to § 402(a)(5), 42 U. S. C. § 602(a)(5), under which a state plan under Title IV–A "must . . . provide such methods of administration . . . as are found by the Secretary to be necessary for the proper and efficient operation of the plan." See App. to Motion to Affirm 8a. This section applies to all portions of a state plan under Title IV–A, including the EA program. See *Quern, supra,* at 741–742.

the kind of emergencies they will meet under this program."
App. 173a. Nevertheless, *"[a] State Plan must clearly
specify that AFDC recipients are included in its EA pro-
gram.* Other categories of needy families with children may
be included at State option; these categories must be speci-
fied in the plan." *Id.,* at 174a (emphasis added). In an *ami-
cus* brief filed at the invitation of the Court of Appeals below,
the Secretary confirmed that New York's exclusion of AFDC
recipients through its no-cash and loss-or-theft provisions vi-
olates federal regulations, in particular the "equitable treat-
ment" regulation, 45 CFR § 233.10 (1981). App. to Motion to
Affirm 12a–17a. As the Secretary interpreted that regula-
tion, the discrimination in New York's program is not justi-
fied by, or tailored to, the purposes of the EA program. *Ibid.*[9]

We agree that New York's law is invalid under the equita-
ble-treatment regulation insofar as it automatically excludes
AFDC recipients from the EA program. The regulation,
and the Secretary's decision to apply it to strike down New
York's no-cash and loss-or-theft rules, clearly deserve judi-
cial deference. We have often noted that the interpretation
of an agency charged with the administration of a statute is
entitled to substantial deference. See, *e. g., FEC* v. *Demo-
cratic Senatorial Campaign Committee,* 454 U. S. 27 (1981);

---

[9] It appears that the Secretary has consistently taken the position that
automatic exclusions of AFDC recipients from an EA program violate the
"equitable treatment" regulation, 45 CFR § 233.10 (1981). In an *amicus*
brief filed at the invitation of the court in *Ingerson* v. *Pratt,* Civ. Action
No. 76–3255–S (Mass., Nov. 14, 1979), the Secretary stated that the regu-
lation applies to EA programs. The Office of Family Assistance later de-
termined that Massachusetts' "recipient status" rule violates the regulation
because it provides that the EA benefits available to AFDC recipients will
be affected by the amount received in the AFDC grant, whereas the EA
benefits available to non-AFDC recipients will not be affected by the
amount of assistance received. Documentation of the U. S. Dept. of
HEW relating to *Ingerson* v. *Pratt,* File of the Clerk of this Court in
No. 81–770. The District Court has invalidated this rule (as well as an-
other state rule) based on the "equitable treatment" regulation. *Ingerson*
v. *Pratt,* Civ. Action No. 76–3255–S (Mass., Feb. 8, 1982).

*Quern,* 436 U. S., at 738. In light of the strong support in the legislative history for the Secretary's conclusion that the automatic exclusion of AFDC recipients from an EA program is inequitable in light of the purposes of the EA program, we find such deference particularly appropriate in this case.

## C

In 1967, Congress thoroughly revised the Social Security Act, including many of its public assistance provisions. The House and Senate Committee Reports concerning the portion of the revision that would ultimately become the EA program[10] make it unmistakably clear that AFDC recipients were expected to benefit from the program. The initial House Report states:

> "Your committee understands that the process of determining eligibility and authorizing payments frequently precludes the meeting of emergency needs when a crisis occurs. In the event of eviction, or when utilities are turned off, or when an alcoholic parent leaves children without food, immediate action is necessary. It frequently is unavailable under State programs today.

---

[10] The EA program, a small part of the 1967 Social Security Amendments, originated with the President's limited proposal to extend temporary assistance to migratory workers. See H. R. 5710, 90th Cong., 1st Sess., 122–123 (1967). The assistance "would be in an amount consistent with what the individuals would receive if they were eligible under a public assistance plan in the State in which they are living." House Committee on Ways and Means, Section-by-Section Analysis of H. R. 5710, 90th Cong., 1st Sess., 9 (Comm. Print 1967). In the House, the Ways and Means Committee adopted a much broader proposal, very similar to the version ultimately enacted. See H. R. 12080, 90th Cong., 1st Sess., 137–139 (1967). After House passage, the Senate made three changes— increasing the amount of time that emergency assistance would be available, denying assistance if a child or relative refused without good cause to accept employment, and more explicitly protecting migrant workers. In conference, the second and third changes were accepted. H. R. Conf. Rep. No. 1030, 90th Cong., 1st Sess., 60 (1967). Congress adopted the conference bill.

When a child is suddenly deprived of his parents by their accidental death or when the agency finds that the conditions in the home are contrary to the child's welfare, the normal methods of payment have to be suspended while new arrangements and court referrals are made.

"To encourage public welfare agencies to move promptly and with maximum effectiveness in such situations, the bill contains an offer to the States of 50-percent participation in emergency assistance payments. . . . The eligible families involved are those with children under 21 who either are or have recently been living with close relatives. *The families do not have to be receiving or eligible upon application to receive AFDC (although they are generally of the same type),* but they must be without available resources . . . .

"Assistance might be in any form . . . . The provision is broad enough that emergencies can be met in migrant families *as well as those meeting residence requirements of the State's AFDC program.* Its utilization would be optional with the States." H. R. Rep. No. 544, 90th Cong., 1st Sess., 109 (1967) (emphasis added).

This passage leaves the obvious implication that persons who are eligible for AFDC benefits would receive EA. The Senate Report is almost identical, except for an explanation of the changes in the Senate bill. S. Rep. No. 744, 90th Cong., 1st Sess., 165–166 (1967).[11] Indeed, in an earlier summary of this provision, the Senate Report describes EA as one of a series of amendments that "would set up new protections for the children in AFDC families." *Id.*, at 146.[12]

---

[11] The Senate Report also inserts "AFDC" prior to the word "eligibility" in the first sentence quoted in the text above—yet another indication that those eligible for or receiving AFDC were presumed to be covered.

[12] Other portions of the legislative documents indicate that the EA program was viewed as an extension of the AFDC program. For example, the House bill initially contained the title, "Emergency Assistance for Certain Needy *Families with Dependent Children.*" H. R. 12080, 90th

144

The House and Senate debates on this portion of the Social Security Amendments, although abbreviated, buttress our understanding of congressional intent. Senator Long, floor manager of the bill, repeated the Senate Report's characterization of EA as one of several changes that would establish "new protections for the children in AFDC families." 113 Cong. Rec. 32592 (1967). Comments by other legislators reveal a similar understanding.[13] Testimony by witnesses and statements introduced at the Senate hearings on the bill are also illuminating. Many statements assume that AFDC would be covered, and some reveal the belief that EA would be principally an AFDC program.[14]

Cong., 1st Sess., 137 (1967) (emphasis added). The bill as enacted placed the EA provisions within Subchapter IV-A of the Social Security Act, 42 U. S. C. § 601 *et seq.*, entitled "Aid to Families With Dependent Children." 42 U. S. C. §§ 603(a)(5), 606(e). Moreover, numerous historical documents place discussion of the EA program within an "AFDC" category. See, *e. g.*, H. R. Rep. No. 544, 90th Cong., 1st Sess., 97 (1967); Senate Committee on Finance, Social Security Amendments of 1967: Comparison of H. R. 12080, As Passed by the House of Representatives with Existing Law, 90th Cong., 1st Sess., 37–38 (Comm. Print 1967); S. Rep. No. 744, 90th Cong., 1st Sess., 4, 165–166 (1967); Senate Committee on Finance, The Social Security Amendments of 1967, Brief Summary of Major Provisions and Detailed Comparison with Prior Law, 90th Cong., 1st Sess., 68–69 (1968).

[13] Congress expressed concern that categorical aid programs (which include AFDC) were often too inflexible to afford immediate emergency relief. The implicit assumption is that if a state EA plan covered emergency needs that were not promptly met under these programs, persons receiving or eligible for aid under the programs would receive EA. Thus, Senator Ribicoff emphasized that welfare agencies need to have "flexibility" in dealing with emergencies; and Senator Curtis explained that "[f]or a period of 30 days, emergency assistance can be paid in cases where [EA recipients] cannot meet other qualifications." 113 Cong. Rec. 32853, 36319 (1967).

[14] Hearings on H. R. 12080 before the Senate Committee on Finance, 90th Cong., 1st Sess., 1034 (1967) (statement of Commissioner, Louisiana Dept. of Public Welfare); *id.*, at App. A8 (statement of Commissioner, Ala-

## III

The Secretary's decision to apply the "equitable treatment" regulation so as to forbid a State to exclude AFDC recipients from its EA program is eminently reasonable and deserves judicial deference. The regulation explicitly forbids the "inequitable treatment of individuals or groups in the light of the provisions and purposes of the public assistance titles of the Social Security Act." 45 CFR § 233.10 (1981). AFDC recipients are "the core of the Title IV–A system," *Quern*, 436 U. S., at 728, and the principal group of beneficiaries under federally assisted state welfare programs. Moreover, the legislative history reviewed above leaves no doubt that AFDC recipients were expected to be included in a state EA program receiving federal financial assistance.

Because New York's no-cash [15] and loss-or-theft rules con-

bama Dept. of Pensions and Security); *id.*, at App. A125 (statement of Governor of Hawaii); *id.*, at App. A289 (statement of Rhode Island Dept. of Social Welfare).

[15] Appellant asserts that the no-cash rule does not discriminate against AFDC recipients at all. On its face, of course, the rule excludes AFDC as well as all other public assistance recipients and thus violates the regulation. But appellant claims that AFDC recipients may obtain the same emergency benefits through special grants under other provisions of the state welfare law. Both lower courts rejected this claim, concluding that the special grant provisions are more limited than EA provisions. 648 F. 2d, at 807–808; 493 F. Supp., at 872–873. In particular, the Court of Appeals, after reviewing relevant state cases, determined that the state EA program would provide grants in cases of loss caused by burglary or public auction following eviction, and would provide food and other immediate living expenses, while special grants would not cover these items. 648 F. 2d, at 808. We have no reason to question the conclusion of the lower courts, given their familiarity with state law. See *Bishop* v. *Wood*, 426 U. S. 341, 346 (1976).

Of course, we do not suggest that a State may not choose to provide AFDC special grants for emergencies as an alternative to including AFDC recipients within the EA program, if the special grants are provided as promptly and for the same emergencies as the EA grants. Cf. *Quern*, 436 U. S., at 734–739.

flict with a valid federal regulation, they are invalid under the Supremacy Clause. See *Chrysler Corp.* v. *Brown,* 441 U. S. 281, 295–296 (1979). In light of our disposition of this Supremacy Clause claim, we do not address appellees' equal protection argument.[16]

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

---

[16] We do not reach the question whether the loss-or-theft provision in N. Y. Soc. Serv. Law § 350–j (McKinney Supp. 1981) is invalid as applied to public assistance recipients *other* than those receiving AFDC. The question presented in appellant's jurisdictional statement refers only to the discrimination against AFDC recipients; thus, appellant challenges the judgment below only insofar as it requires the granting of EA to AFDC recipients.