**Eugene MEZETIN, Plaintiff,**

v.

**John CUNNINGHAM, Warden, Bronx H.D.M., Department of Correction, City of New York, Sheriff of the City of New York, Defendants.**

**No. 84 Civ. 6275 (GLG).**

United States District Court, S.D. New York.

Feb. 19, 1986.

Eugene Mezetin, pro se.

Frederick A.O. Schwarz, Jr., Corp. Counsel of City of New York, New York City (Antonia Levine and Bonnie Goldsmith, of counsel), for defendants.

GOETTEL, District Judge:

The plaintiff, a former prisoner at the Bronx House of Detention for Men, brought this action, pursuant to 42 U.S.C. § 1983 (1982), alleging that the defendants deprived him of his civil rights in denying him good time credit against his term of incarceration for contempt of court. Following this Court's order of March 20, 1985, denying the defendants' motion for summary judgment, the parties engaged in discovery. They now cross-move for summary judgment.[1] The defendants have somewhat altered their position as to the facts giving rise to this case. However, the defendants' 3(g) statement has not been contraverted by the plaintiff and, consequently, must be accepted by the Court. *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). Indeed, the facts set forth therein all appear undisputed. These facts are as follows:

1. On October 27, 1983, the Honorable Jawn A. Sandifer, Justice of the Supreme Court of New York, New York County, signed a Warrant of Commitment declaring

---

1. The plaintiff also seeks an order directing additional discovery on issues that are rendered moot by this decision.

the plaintiff in contempt of court for wilfully interfering with the duties of a court-appointed receiver and for disobeying a prior order of the Honorable Robert E. White of the Supreme Court of the State of New York, New York County, which directed plaintiff to pay a fine of $20,362.81.

2. On March 12, 1984, the plaintiff appeared before Justice White. Following a hearing at which both the plaintiff and his attorney were present, Justice White found that, although the plaintiff was financially capable of paying the fine imposed upon him by the Court, the plaintiff had nevertheless failed to do so. Justice White ordered that pursuant to the Warrant of Commitment dated October 27, 1983, the plaintiff be "committed to the custody of the Sheriff of the City of New York to be remanded to the Department of Correction until he pays the fine of $20,362.81 ... or pursuant to statute, for 180 days, or until further Order of this Court."

3. On March 12, 1984, the plaintiff was incarcerated at the Bronx House of Detention for Men as a civil prisoner.

4. On June 7, 1984, a hearing was held before Justice White for the purpose of reviewing the plaintiff's confinement. At the conclusion of the hearing, which was attended by the plaintiff, Justice White ordered that the plaintiff once again be remanded to the custody of the Department of Correction until such time as he fully complied with the Court's prior order directing that he pay the fine imposed upon him or was otherwise discharged according to law.

5. On or about July 12, 1984, the plaintiff petitioned the Supreme Court of New York, Bronx County, for a writ of habeas corpus. In his petition, the plaintiff claimed that his contempt commitment constituted a definite sentence of 180 days and that pursuant to §§ 803 and 804 of the New York State Correction Law, he was entitled to have one-third of his sentence, or 60 days, subtracted from this sentence based upon his good behavior. Plaintiff further claimed that, having served 120 days of his sentence, he was entitled to be discharged.

6. On or about July 25, 1984, the defendants produced the plaintiff before Justice Nardelli of the Supreme Court of New York, Bronx County in connection with his petition for a writ of habeas corpus. In a decision, dated July 27, 1984, Justice Nardelli dismissed the plaintiff's petition in its entirety.

7. On or about July 29, 1984, the plaintiff filed a grievance with the New York City Board of Correction's Inmate Grievance Resolution Program, alleging that the Department of Correction had wrongfully denied him credit against his sentence for good behavior. On July 12, 1984, the petitioner's grievance was denied. This decision was subsequently appealed to the Board of Correction. In a written decision dated August 8, 1984, the Board of Correction again denied the plaintiff's grievance on the ground that the Department of Correction was bound by the Court's rulings to retain custody of the plaintiff for the 180-day statutory period unless the plaintiff chose, by his own action, to purge himself of his contempt of court.

8. On September 7, 1984, after having been imprisoned for 180 days, the plaintiff was discharged from the Bronx House of Detention for Men.

9. During the period of his incarceration, the plaintiff did not pay the fine ordered by the Supreme Court of New York, New York County and thus did not purge himself of his contempt.

10. The Department of Correction granted an allowance for good behavior to approximately eleven contemnors who were imprisoned during the period of the plaintiff's incarceration. Each of the eleven contemnors who received good time credit had been committed pursuant to a court order which provided for a definite term of imprisonment.

11. The Department denied good time credit to the plaintiff and to one other contempt prisoner who, like the plaintiff, had been imprisoned pursuant to a court

order which provided that the contemnor could purge his contempt by performing a specified act during the term of his commitment, and thereby gain his release from prison.

Upon the foregoing facts, the matter is ripe for a ruling on the legal issues presented.

■ We note first that the plaintiff has no right under New York State law to time off for good behavior. Reductions in sentence for good behavior in New York State are awarded pursuant to Article 24 of the New York State Correction Law. The awards are discretionary and are expressly limited to persons serving sentences imposed under the provisions of the Penal Law. However, these provisions do not apply to persons in prison for contempt under the Judiciary Law. N.Y. Correct. Law § 800 (McKinney 1968). *Trice v. Ciuros*, 127 Misc.2d 289, 485 N.Y.S.2d 689 (Sup.Ct. Onondaga County 1985). Since the plaintiff was committed for contempt pursuant to section 774 of New York's Judiciary Law, he had no entitlement to good time under Article 24.

■ ■ The plaintiff is left to his claim that since certain civil contemnors are being afforded good time by the New York prison authorities, he is being denied equal protection under the laws in violation of the fourteenth amendment. Consideration of an equal protection claim starts with a determination of whether the conduct operates to the disadvantage of a suspect class or violates a fundamental right protected by the Constitution. *Maher v. Rowe*, 432 U.S. 464, 470, 97 S.Ct. 2376, 2380, 53 L.Ed.2d 484 (1977). It cannot be said that persons who commit contempt of court are a suspect class. Nor is there a constitu-tional right to good time credits while in prison. *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Consequently, the distinctions afforded different types of contempt sentences need only be subject to minimum judicial scrutiny. So long as the challenged practice is reasonably calculated to further a legitimate state interest, it should be sustained. *Bacon v. Toia*, 648 F.2d 801 (2d Cir.1981), *aff'd*, 457 U.S. 132, 102 S.Ct. 2355, 72 L.Ed.2d 728 (1982).

■ The New York Department of Corrections distinguishes between prisoners whose contempt citations are for a fixed period[2] and those, like the plaintiff, who can obtain their release by complying with an outstanding order of the court.[3] When the order of commitment directs the contemnor to serve a definite term of imprisonment, a reduction in the term will generally be awarded for good behavior. On the other hand, when the commitment order provides for a flexible term, credit for good behavior will not be granted.

The defendants' policy is both logical and consistent with the well-established principles that distinguish between punitive and coercive contempt confinements. Where the contempt commitment is for a specific period of time, and the contemnor does not hold the key to the prison in his hands, his sentence resembles that of a criminal conviction. Since the purpose of the sentence is punitive in nature, there is need for providing him with an incentive for good behavior. The allowance for good time provides the incentive. On the other hand, a contemnor who can secure his release simply by obeying the Court's order needs no further incentive. Moreover, to classify his continued willful violation of the Court

---

**2.** A fixed term of imprisonment for contempt may be imposed only when the act of contempt is completed. *Wides v. Wides,* 96 A.D.2d 592, 465 N.Y.S.2d 285 (2d Dep't 1983). Contempts resulting from completed acts are sometimes referred to as "criminal contempts," whereas those based upon a continuing wrong are often referred to as "civil contempts." Dobbs, *Con-tempt of Court: A Survey,* 56 Cornell L.Rev. 183, 235–236 (1970).

**3.** That the plaintiff could be held no more than 180 days does not fix the period of his imprisonment, since he could have been released at any time prior thereto.

order as "good behavior" is inherently contradictory.

The plaintiff has not demonstrated that the distinction in affording good time allowances to "criminal contemnors" but not to "civil contemnors" is entirely irrational and unrelated to a legitimate governmental purpose.[4] *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 314–316, 96 S.Ct. 2562, 2567–2568, 49 L.Ed.2d 520 (1976). Thus, he has not stated a claim under the Constitution, and his civil rights complaint is dismissed.

We need not, therefore, reach the alternative arguments that the claims against the Warden are barred by the doctrine of the good faith immunity,[5] or that this action is barred by the doctrine of *res judicata* because of the adverse decision in state court of Justice Nardelli. We are, however, in substantial agreement with the decision of Judge Conner in both of those regards in an almost identical action. *Mirtuono v. Cunningham,* No. 85–533, slip op. (S.D.N.Y. July 23, 1985) (Conner, J.)

The petition is dismissed. The Clerk will enter judgment for the defendants.

SO ORDERED.

---

**4.** Plaintiff has made no claim to a liberty interest protected by the due process clause of the fourteenth amendment. Had he done so, we would find that none exists since there is no state-created right to receive good time credit. *Mirtuono v. Cunningham,* No. 85–533, slip op. (S.D.N.Y. July 23, 1985) (Conner, J.)

**5.** In addition to suing the Warden, the plaintiff has also sued, by title but not name, the "Sheriff of the City of New York." His reason for adding the Sheriff to this case is unclear. He has brought another case against the Sheriff and a number of city officials and judges in which he alleges violations of his due process rights and false imprisonment in holding him in contempt of court and imprisoning him in the first place. *Mezetin v. Michels,* No. 85–3210 (DNE). A Magistrate's report and recommendation dated November 20, 1985, recommends that the Sheriff's motion to dismiss the action against him should be granted for failure to state a claim upon which relief can be granted.