834 F.2d 115
 Devon C. FRENCH; Renaldo Presswood; and Antwon French by
their mother Shellie French, Plaintiffs-Appellees,
v.
Agnes M. MANSOUR, individually and in her capacity as
Director of the Michigan Department of Social
Services, Defendant-Appellant.
 No. 87-1053.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 27, 1987.
Decided Nov. 30, 1987.
 
 Stephen H. Garrard (Lead) (argued), Asst. Atty. Gen., Frank J. Kelley, Louis J. Caruso, Sol. Gen., Lansing, Mich., for defendant-appellant.
 Terri L. Stangl (argued), Legal Services of East. Michigan, Saginaw, Mich., for plaintiffs-appellees.
 Before MARTIN and BOGGS, Circuit Judges, and WISEMAN,* Chief District Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Agnes Mansour, Director of the Michigan Department of Social Services, challenges a decision granting emergency assistance benefits to Shellie French and her three children. She argues that the district court erred in finding that the denial of benefits was arbitrary and inequitable in violation of the federal regulations. We reverse.
 
 
 2
 The Social Security Act creates several different aid programs that provide grants from the federal government to the states for assistance to needy families with children. The program, Aid to Families with Dependent Children, is designed to help the "dependent child," who is a " 'needy child' ... who has been deprived of parental support or care by reason of the death, continued absence from home, or physical or mental incapacity of a parent, and who is living with any one of several listed relatives." King v. Smtih, 392 U.S. 309, 313, 88 S.Ct. 2128, 2131, 20 L.Ed.2d 1118 (1968) (quoting 42 U.S.C. Sec. 606(a)). Normally the dependent child lives with a "responsible" or "caretaker relative." 42 U.S.C. Sec. 602(a)(33). In order for that relative to receive an Aid to Families with Dependent Children allotment for their personal needs, they must cooperate with the state agency in establishing paternity for each dependent child, if necessary, and in securing child support from the absent parent. 42 U.S.C. Sec. 602(a)(26). If the relative refuses without good cause to cooperate, the state agency may deny him an Aid to Families with Dependent Children allotment, but the dependent child will continue to receive Aid to Families with Dependent Children "protective payments" for the child's, but not the relative's, needs. 42 U.S.C. Sec. 602(a)(26)(B); 42 U.S.C. Sec. 606(b)(2), (f); 45 C.F.R. Sec. 232.12(d) (providing that benefits shall be denied to a caretaker who fails to cooperate in obtaining benefits but that protective payments shall be given to the child).
 
 
 3
 In 1967, Congress added to the social security protections the Emergency Assistance to Needy Families with Children program. This program, according to the Senate Finance Committee report, was designed to be "optional with the states [and to] authorize dollar-for-dollar Federal matching to provide temporary assistance to meet the great variety of situations faced by needy children in families with emergencies." S.Rep. No. 744, 90th Cong., 1st Sess., 4 (1967), U.S.Code Cong. & Admin.News 1967, p. 3834. See 42 U.S.C. Sec. 603(a)(5) (providing that the federal government reimburse states for fifty percent of Emergency Assistance expenses). In contrast to Aid to Families with Dependent Children, Emergency Assistance is "not a comprehensive system of income maintenance, but rather a program designed to allow quick, ad hoc responses to immediate needs." Quern v. Mandley, 436 U.S. 725, 744, 98 S.Ct. 2068, 2079, 56 L.Ed.2d 658 (1978). Congress did not limit Emergency Assistance benefits to Aid to Families with Dependent Children recipients because it wanted to "encourage the State to move quickly in family crises, supplying the family promptly with appropriate services," in the expectation that prompt assistance "would in many cases preclude the necessity for the family having to go on [Aid to Families with Dependent Children] assistance on a more or less permanent basis." 113 Cong.Rec. 23054 (1967) (remarks of Rep. Mills). In short, Congress designed Emergency Assistance "to assure needed care for children, to focus maximum effort on self-support by families, and to provide more flexible and appropriate tools to accomplish these objectives." S.Rep. No. 744, 90th Cong., 1st Sess., 165 (1967), U.S.Code Cong. & Admin.News 1967, p. 3834.
 
 
 4
 Pursuant to the statutory authorization for Emergency Assistance, the Department of Health and Human Services promulgated regulations relating to Emergency Assistance which provides:
 
 
 5
 (a) State plan requirements. A State plan under title I, IV-A, X, XIV, or XVI, of the Social Security Act must:
 
 
 6
 (1) Specify the groups of individuals, based on reasonable classifications, that will be included in the program, and all the conditions of eligibility that must be met by the individuals in the groups. The groups selected for inclusion in the plan and the eligibility conditions imposed must not exclude individuals or groups on an arbitrary or unreasonable basis, and must not result in inequitable treatment of individuals or groups in light of the provisions and purposes of the public assistance titles of the Social Security Act....
 
 
 7
 (ii) a A State may:
 
 
 8
 (A) Provide more limited public assistance coverage than that provided by the Act only where the Social Security Act or its legislative history authorizes more limited coverage;
 
 
 9
 (B) Impose conditions upon applicants for and recipients of public assistance which, if not satisfied, result in the denial or termination of public assistance, if such conditions assist the State in the efficient administration of its public assistance programs, or further an independent State welfare policy, and are not inconsistent with the provisions and purposes of the Social Security Act.
 
 
 10
 45 C.F.R. Sec. 233.10(a)(1)(ii)(A), (B).
 
 
 11
 Michigan elected to create an Emergency Assistance program, which it refers to as the Emergency Needy Program. The Michigan Department of Social Services has set forth in its Emergency Needs Manual the policy that:An applicant must pursue all potential resources in order to qualify for Emergency Needs Program. This means agreeing to take all reasonable actions necessary to obtain a resource and refraining from actions that cause the loss or delay in receipt of any income or resource.
 
 
 12
 The manual explicitly specifies Aid to Families with Dependent Children benefits as a potential resource, and it reiterates that "Emergency Needs Program applicants are required to apply for and utilize all available programs and benefits which may reduce or eliminate the current or future need."
 
 
 13
 In accordance with its requirement that emergency assistance applicants pursue other potential resources first, the Michigan Department of Social Services denied Shellie French's request because of her refusal to comply with Aid to Families with Dependent Children requirements which led to her exclusion from Aid to Families with Dependent Children program benefits. She and her three dependent children began receiving Aid to Families with Dependent Children benefits more than five years ago. In July 1982, the Michigan Department of Social Services notified French that during the following month her needs would be removed from the group payments because of her refusal to identify the father of her youngest son, Antwon. At a hearing, an administrative law judge affirmed the department's decision, finding that she had failed to cooperate in establishing the paternity of Antwon and that the department properly enforced the support sanction denying her benefits. The sanction applied only to Shellie French, by deleting her personal Aid to Families with Dependent Children needs allowance; the three dependent children continue to receive benefits. The children's benefits included allowances for shelter, for heat and utilities, and for personal needs.
 
 
 14
 In April 1985, the local power company informed French it would stop service to the family residence because of her failure to pay her bills. French applied for emergency assistance funds, but the department denied the request because of the Aid to Families with Dependent Children support sanction springing from her continued refusal to help establish Antwon's paternity. French successfully challenged that denial in district court. The court held that the department's decision was arbitrary and inequitable in violation of 45 C.F.R. Sec. 233.10. The court also enjoined the department from denying any future emergency assistance applications because the responsible relative had been sanctioned for failing to cooperate in establishing a child's paternity or in obtaining child support.
 
 
 15
 The Michigan Department of Social Services was well within its authority when it denied emergency assistance benefits to French. The federal regulations governing Emergency Assistance to Needy Families with Children programs provide that states may "[i]mpose conditions upon applicants for ... public assistance which, if not satisfied, result in the denial ... of public assistance, if such conditions assist the State in the efficient administration of its public programs." 45 C.F.R. Sec. 233.10(a)(1)(ii)(B). The Michigan requirement that an emergency assistance applicant first exhaust other potential resources clearly falls within this requirement of assisting in the "efficient administration" of its emergency assistance program. By directing applicants to other sources first, Michigan is able to lighten the burdens on its own financial expenditures. By establishing paternity and seeking child support, the exhaustion of potential resources shifts the financial burden to responsible individuals. Diverting applicants to other available resources thus enables Michigan to conserve its funds in this direct cash benefit program for those most needy. Although the federal funded half of the program is open-ended, there is no indication that the half funded by Michigan is equally open-ended.
 
 
 16
 French contends that this requirement violates the "equitable treatment" provision in the federal regulations. That provision prohibits the states from imposing eligibility conditions that "exclude individuals or groups on an arbitrary or unreasonable basis, and [those conditions] must not result in inequitable treatment" in view of the terms and purposes of the social security laws. 45 C.F.R. Sec. 233.10(a)(1). In making that argument, French cites Blum v. Bacon, 457 U.S. 132, 102 S.Ct. 2355, 72 L.Ed.2d 728 (1982), in which the Supreme Court reviewed the decision of the Secretary of Health and Human Services to apply the "equitable treatment" regulation so as to forbid New York from excluding Aid to Families with Dependent Children recipients from its emergency assistance program. In affirming the Secretary's decision, it was strongly persuaded by the legislative history which left "the obvious implication that persons who are eligible for Aid to Families with Dependent Children benefits would receive Emergency Assistance." Id. at 143, 102 S.Ct. at 2362, 72 L.Ed.2d at 737 (quoting H.R.Rep. No. 544, 90th Cong., 1st Sess., 109 (1967); citing S.Rep. No. 744, 90th Cong., 1st Sess., 165-66 (1967)), U.S.Code Cong. & Admin.News 1967, p. 2834. That is, because Congress intended Emergency Assistance to be a supplement to the public assistance framework of which Aid to Families with Dependent Children was the centerpiece, a state could not categorically exclude Aid to Families with Dependent Children recipients from Emergency Assistance.
 
 
 17
 Unlike the New York regulation in Blum, the Michigan emergency assistance program does not undercut the public assistance provisions of the social security laws by categorically excluding people eligible for Aid to Families with Dependent Children benefits. Rather, the Michigan policy of directing the applicant to other resources first and, in this case, requiring the applicant to help establish paternity and seek child support coincides with the provisions and purposes of the public assistance programs. The requirement was based on the Aid to Families with Dependent Children requirement that an applicant help the state determine paternity or show "good cause" why he cannot. 42 U.S.C. Sec. 602(a)(26). This Aid to Families with Dependent Children provision manifests the federal policy of requiring the cooperation of benefit recipients in minimizing costs on the public account.
 
 
 18
 French has elected not to cooperate with the Michigan Department of Social Services in establishing Antwon's paternity, and, as a consequence, the department has imposed a support sanction against her. She could at any time have the sanction removed by either helping establish Antwon's paternity or showing good cause why she cannot. Removing the sanction would clear the obstacles to her family's application for emergency assistance.
 
 
 19
 The social security laws and regulations do not preclude the states from requiring affirmative acts on the part of emergency assistance applicants, particularly when those acts might reduce or eliminate the need for government assistance. The Michigan exhaustion of resources requirements comports with the federal Emergency Assistance to Needy Families with Children requirements and with the Congressional policy of helping those truly needy and seeking to avoid long-term dependency. French, therefore, cannot complain that she has been improperly denied benefits when she has refused to assist in fulfilling Michigan's legitimate, cost-reducing requirements.
 
 
 20
 The judgment of the district court is reversed.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Jr., Chief United States District Judge for the Middle District of Tennessee, sitting by designation