**TRANS FLEET ENTERPRISES, INCORPORATED,**
Petitioner,

v.

**James T. BOONE; United States Department of Labor,**
Respondents.

**James T. BOONE, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR; Trans Fleet Enterprises, Incorporated, Respondents.**

Nos. 91–2659, 91–2668.

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1992.

Decided Nov. 30, 1992.

Amended by Orders Filed Jan. 6, and Jan. 8, 1993.

Gregory Lewis Hammond, Hammond & Cunningham Co., L.P.A., Akron, OH, argued (Robert A. Cunningham, on brief), for petitioner.

Terri Parker DeLeon, U.S. Dept. of Labor, Washington, DC, for respondent Department; Lee L. Corum, Durham, NC, for respondent Boone, argued (Marshall J. Breger, Sol. of Labor, Cynthia L. Attwood, Associate Sol. for Occupational Safety and Health, Bruce Justh, Asst. Counsel for Appellate Litigation, U.S. Dept. of Labor, Washington, DC, for Respondent Department; Nick Galifianakis, Upchurch & Galifianakis, Durham, N Carolina, for respondent Boone, on brief), for respondents.

Before HALL, Circuit Judge, KISER, District Judge for the Western District of Virginia, sitting by designation, and BLATT, Senior District Judge for the District of South Carolina, sitting by designation.

## OPINION

K.K. HALL, Circuit Judge.

Trans Fleet Enterprises, Inc. ("TFE") appeals the Secretary of Labor's ruling that TFE violated the Surface Transportation Assistance Act of 1982, 49 U.S.C.App. §§ 2301–2305 (1988) ("the Act") and that awarded back pay to and reinstatement of James T. Boone, Jr., a former TFE employee. Because the Secretary adopted only one of the two alternative grounds upon which the ALJ based his decision, Boone also appeals.

### I.

Boone, a truck driver for TFE, was returning to the company's North Carolina headquarters on Saturday, November 5, 1988, when he was contacted and informed that he and Clements, another driver, were to be dispatched the next day for an 8:00 a.m. Monday delivery in Cincinnati. Boone responded that he "didn't have the hours,"

referring to the Department of Transportation's regulations that limit the number of hours that a truck driver may drive within certain time periods. Shortly before the scheduled beginning of the Cincinnati run on Sunday, Boone again complained that he lacked sufficient driving-time. After Clements was dispatched alone, Boone was fired for refusing the dispatch.

Boone filed a complaint with the Secretary, claiming a violation of Section 405(a) of the Act (49 U.S.C.App. § 2305(b)), which prohibits the discharge of drivers who refuse to operate a vehicle under either of the following circumstances: (1) when such operation would constitute a violation of federal law (the "when clause"), or (2) because of the reasonable apprehension of injury to self or the public due to unsafe conditions (the "because clause").*

The first rung of the adjudicatory process, the regional administrator for the Occupational Health and Safety Administration, denied relief. Boone filed objections, and after a five-day hearing, an administrative law judge (ALJ) for the Department of Labor found that TFE's discharge of Boone violated both the when and because clauses. The ALJ ordered TFE to reinstate Boone and to pay back wages from the date of discharge (November 8, 1988) through the date of reinstatement. TFE was also ordered to pay costs and attorney's fees.

TFE filed objections. The Secretary upheld the award, but only under the "when clause" rationale. These appeals followed.

## II.

The Act was enacted in 1982 in response to concerns over unsafe commercial trucking practices. Pub.L. No. 97–424, Title IV, § 405, 96 Stat. 2157. The Act directs the Department of Transportation to promulgate safety regulations. These regulations include "driving-time" rules that strictly limit a driver's hours of operation. For example, a driver may not be permitted or required to drive "[m]ore than 10 hours following 8 consecutive hours off duty...." 49 C.F.R. § 395.3. An adjunct to the straightforward hours-of-operation rules is the "driver-fatigue" rule, found at 49 C.F.R. § 392.3:

> No driver shall operate a motor vehicle, and a motor carrier shall not require or permit a driver to operate a motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate the motor vehicle. However, in a case of grave emergency where the hazard to occupants of the vehicle or other users of the highway would be increased by compliance with this section, the driver may continue to operate the motor vehicle to the nearest place at which that hazard is removed.

The parties stipulated that on the Sunday on which the Cincinnati run was to begin, Boone had only one-half hour of available driving-time through the end of the day, and that he would have gained another half-hour at midnight. Cincinnati is a 13.5 hour drive from the TFE headquarters. Even if a 12:45 p.m. Sunday start is assumed (Clements actually left at 3:30 p.m.), and Clements' available hours are included, the Boone–Clements team could have arrived at their destination no earlier than

---

* Section 405(b) provides in full:

No person shall discharge, discipline or in any manner discriminate against any employee with respect to the employee's compensation, terms, conditions, or privileges of employment for refusing to operate a vehicle *when* such operation constitutes a violation of any Federal rules, regulations, standards, or orders applicable to commercial motor vehicle safety or health, or *because* of the employee's reasonable apprehension of serious injury to himself or the public due to the unsafe condition of such equipment. The unsafe conditions causing the employee's apprehension of injury must be of such nature that a reasonable person, under the circumstances then confronting the employee, would conclude that there is a bona fide danger of an accident, injury, or serious impairment of health, resulting from the unsafe condition. In order to qualify for protection under this subsection, the employee must have sought from his employer, and have been unable to obtain, correction of the unsafe condition. (emphasis added).

8:45 a.m. Monday if they observed driving-time rules. Thus, at the scheduled start of the trip, the delivery could not have legally been made on time.

The ALJ determined that TFE's dispatcher knew or should have known at the time of the dispatch that the trip could not have been completed timely under the driving-time rules in effect; TFE takes no issue with this finding. The focus of TFE's argument is and has been that it would not have been illegal *to start the trip* because both Clements and Boone had available time as of 12:45 p.m. on Sunday. Moreover (the argument continues), company policy requires drivers who run out of driving-time during a run to shut down until legal operation can be resumed, regardless of the scheduled delivery times for their cargo. Because there were no other available drivers at the time, it was both legal and sensible to start the run, because a delivery an hour late was better than one even later.

Whether the company put pressure on drivers to meet scheduled delivery times, even if driving-time rules had to be broken to do so, was a hotly disputed issue before the ALJ. Crucial testimony came from Paula Hodges, the former safety manager for TFE. She testified that the dispatchers used veiled phrases such as "hot load" or "it's got to get there" to imply that a driver was supposed to make a scheduled delivery even if driving-time rules had to be ignored. Hodges' testimony corroborated Boone's and Clements' testimony in this regard, and it led to the following pivotal ruling:

> When confronted with Boone's protests that he did not have the hours for the dispatch, if Scott [TFE's dispatcher] had intended him to drive legally, he could have specifically told Boone that he did not have to adhere to the 8:00 a.m. delivery time for Cincinnati. The fact that he did not do so compels the conclusion that he intended for Boone to make the delivery on time. Therefore the testimony of Boone and Clements that they were expected to get to Cincinnati by 8:00 a.m. on November 7 even if doing so required violating the DOT driving time ... rules,

is credited. The fact that they could not have made the delivery on time when Boone last refused the dispatch compels the conclusion that Boone was dispatched illegally.

The Secretary upheld the critical factual premise of this ruling: "the pressure on the drivers to complete the delivery on time, and illegally, was clearly established." This was reiterated in the Secretary's summation of the "critical facts" that she found to be substantially supported in the record: "[TFE] expected [Boone] and his driving partner to arrive in Cincinnati by 8:00 a.m. on November 7, even if doing so required violating DOT driving time rules." The Secretary also expressly rejected TFE's contention that it "would have accepted a late and legally driven delivery." This appeal rises or falls on this factual finding, our review of which is limited to determining whether there is substantial evidence on the record as a whole to support the Secretary's finding. 49 U.S.C. § 2305(d); *see Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (" '[S]ubstantial evidence ... means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' ") (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

### III.

TFE mischaracterizes the decision below as effectively barring trucking companies from *ever* dispatching truckers late. Ignoring the essential factual finding that the company exerted pressure on its drivers, TFE posits the following absurdity as the Secretary's holding: if a delivery cannot legally be made on time, it can never be made at all. This is a bad beginning for their argument on appeal.

The company argues that it was not illegal to dispatch Boone because he and his partner had sufficient hours to *begin* the run; only if they were to have continued driving after exhausting their available time would a violation have occurred. Thus, the dispatch was *legal when made,*

and Boone should not be protected under the Act's "when clause" for refusing a legal dispatch. TFE adds that "there was no evidence produced ... to the effect that there was pressure to deliver on time rather than shut down." Appellant's Brief at 41. We take this assertion to mean that TFE believes that the Secretary's finding was not supported by substantial evidence on the record as a whole. We disagree.

At the administrative level, the case essentially boiled down to a credibility determination. On one side were current TFE employees; on the other, former employees. Although TFE made a strong case, we are of the opinion that substantial evidence supports the finding that pressure was exerted on Boone (and Clements) regarding the November 6–7 Cincinnati run. When Boone told the dispatcher of his lack of hours, the dispatcher did nothing to indicate any concern. He failed to check Boone's or Clements' logs to determine available driving time; he did not call the customer to warn him of a later delivery than scheduled; no attempt was made to arrange delivery through another carrier. TFE offered only testimony of a *general* policy to observe the driving-time regulations, but this evidence was also contradicted by Boone, Clements and Hodges. It is a familiar principle that credibility determinations by a fact-finder who observed the witnesses will not ordinarily be disturbed on appeal. *Breeden v. Weinberger*, 493 F.2d 1002, 1010 (4th Cir.1974). The Secretary's decision to accept the ALJ's credibility determination in this regard is unimpeachable.

■ The legal premise of the Secretary's decision is that a dispatch that *contemplates* a violation of the driving-time rules by the driver is illegal even if the driver had available driving-time at the outset of the run. Section 405(b) protects a driver who refuses a dispatch "when such operation constitutes a violation of any Federal rules." The Secretary's interpretation of the Act will be deemed correct "if it reflects a plausible construction of the plain language of the statute and does not otherwise conflict with Congress' expressed intent." *Rust v. Sullivan*, —— U.S. ——, ——, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233 (1991). It strikes us as eminently reasonable that the Act was intended to protect drivers from having to begin trips when their employer has exerted pressure to violate the federal rules at some point during the trip.

## IV.

The Act also protects drivers who refuse a dispatch *because* of a "reasonable apprehension" that the run will be unsafe for some reason, e.g., equipment failure or driver fatigue. The ALJ grounded his decision on the "because clause" as well as the "when clause," but the Secretary declined to adopt this alternative holding because Boone never indicated to the dispatcher that his refusal was based on subjective safety concerns. Driver fatigue may well have been on Boone's mind when he refused to drive to Cincinnati, but he only expressed concern over his lack of driving time. In any event, Boone was the prevailing party below, and judicial review may be sought only by "[a]ny person adversely affected or aggrieved by [the Secretary's final] order." 49 U.S.C.App. § 2305(d); *see Balcom v. Lynn Ladder and Scaffolding Co., Inc.*, 806 F.2d 1127 (1st Cir.1986) (a party may not appeal a judgment in his favor.). Of course, in his response to TFE's appeal, Boone "may rely on upon any matter appearing in the record in support of the judgment below." *Blum v. Bacon*, 457 U.S. 132, 137 n. 5, 102 S.Ct. 2355, 2359 n. 5, 72 L.Ed.2d 728 (1982). Our ruling on the "when clause," however, obviates the need to reach the alternative basis for the decision below.

## V.

■ The hearing before the ALJ was completed on April 26, 1990, and post-hearing briefs were filed by the parties over the next three months. A final decision was not issued until March 28, 1991. TFE contends that this delay violates the agency's own regulation that directs entry of a decision within thirty days. 29 C.F.R. § 1978.-109(a). Inasmuch as the ultimate back pay

 

award encompasses the entire period from the date of Boone's discharge, TFE requests some limitation on its liability for back pay.

The 30–day period prescribed by 29 C.F.R. § 1978.109(a) is expressly made directory by § 1978.114:

> The time requirements imposed on the Secretary by these regulations are directory in nature. While every effort will be made to meet these requirements, there may be instances when it is not possible to meet these requirements. Failure to meet these requirements does not invalidate any action by the Assistant Secretary or Secretary under section 405.

Even statutory time limits for agency action are usually deemed directory. *See Roadway Express, Inc. v. Dole,* 929 F.2d 1060, 1066 (5th Cir.1991).

The 30–day period for the ALJ decision implements the Secretary's statutory mandate to assure that hearings are conducted expeditiously. 49 U.S.C.App. § 2305(c)(2)(A). We are not unsympathetic to TFE's argument; unreasonable delay in agency decision-making extracts costs from both employer and employee. However, we do not feel that the delay in the instant case was unreasonable. The ALJ had to consider sharply-conflicting testimony, and the result was a lengthy and well-reasoned decision.

### VI.

A discharged employee must make a reasonable effort to mitigate his damages. *O'Neal v. Gresham,* 519 F.2d 803, 805 (4th Cir.1975). Boone testified that he applied for work at 35 trucking firms and at some non-trucking employers after his discharge, but he was unsuccessful. He then began a landscaping business, which proved a financial failure. The ALJ found that "Boone showed reasonable diligence in attempting to find work in his field." Essentially, this finding is based on a credibility determination by the ALJ that Boone did in fact apply to 35 trucking firms and that he lost money in his landscaping business. TFE argues that Boone failed to show sufficient supporting evidence, but

this does not overcome the effect of the fact-finder's assessment of Boone's credibility in this regard.

No. 91–2659 is AFFIRMED;

No. 91–2688 is DISMISSED.