No. 13167

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

THE STATE OF MONTANA ex rel
STEPHEN WALTER LANCE,

Relator,

-vs-

THE DISTRICT COURT OF THE THIRTEENTH
JUDICIAL DISTRICT OF THE STATE OF
MONTANA, in and for the County of Yellowstone,
and the HON. ROBERT H. WILSON, Presiding Judge,

Respondents.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Relator:

Moses, Kampfe, Tolliver & Wright, Billings, Montana
D. Frank Kampfe argued, Billings, Montana

For Respondents:

Hon. Robert L. Woodahl, Attorney General,
Helena, Montana
Thomas A. Budewitz, Assistant Attorney General,
argued, Helena, Montana
Harold F. Hanser appeared, County Attorney, Billings,
Montana

For Amicus Curiae:

Thomas Honzel argued, Helena, Montana

---

Submitted: October 29, 1975

Decided: NOV 12 1975

Filed: NOV 12 1975

_____
                     Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an application for a writ of supervisory control or other appropriate writ. Relator Stephen Walter Lance was charged by Information with one felony count of criminal sale of dangerous drugs (marijuana), and one felony count of possession of dangerous drugs (marijuana), in the district court, Yellowstone County. A motion to dismiss was filed, heard and denied. Relator then petitioned this Court for a writ of supervisory control directing the district court to dismiss the Information. An adversary hearing was held before this Court.

Relator challenges the two statutes under which he was charged, sections 54-132 and 54-133, R.C.M. 1947. Relator contends that both sections fail to state a crime and the attempted enforcement of such statutes is in violation of the due process clause in the Fourteenth Amendment to the United States Constitution and Article II, Section 17, 1972 Montana Constitution.

Section 54-132 reads in part:

"(a) A person commits the offense of a criminal sale of dangerous drugs if he sells, barters, exchanges, gives away, or offers to sell, barter, exchange or give away, manufactures, prepares, cultivates, compounds or processes any dangerous drug as defined in this act." (Emphasis added.)

Section 54-133 reads in part:

"(a) A person commits the offense of criminal possession of dangerous drugs if he possesses any dangerous drug as defined in this act." (Emphasis added.)

Sections 54-132 and 54-133 were enacted on March 11, 1969, as part of the Montana Dangerous Drug Act. Also included in that act was section 54-129, which defined the term "dangerous drug".

Thereafter, on March 21, 1973, the legislature enacted further drug legislation borrowing heavily from the Uniform Controlled Substances Act. As part of that legislation, it repealed section 54-129. It also amended sections 54-132 and 54-133 to their present form. The new legislation was codified as sections 54-301

through 54-327, R.C.M. 1947. The Montana Dangerous Drug Act remained in Title 54, Chapter 1, Revised Codes of Montana.

First, relator presents for this Court's consideration the argument that there are now two separate drug acts in force in the state of Montana: (1) the Montana Dangerous Drug Act, and (2) what relator labels the "Controlled Substances Act". Relator argues that by repealing section 54-129 the Montana Dangerous Drug Act no longer has a definition of a dangerous drug, therefore relator cannot be charged with either the sale or possession of a dangerous drug under sections 54-132 and 54-133 for both statutes use the phrase "dangerous drug as defined in this act". Relator argues that there is no such definition.

With that argument this Court cannot agree. House Bill No. 128, 43rd Legislative Assembly, was entitled:

> "AN ACT TO AMEND THE DANGEROUS DRUG ACT, BY ADOPTING SUBSTANTIALLY THE DEFINITIONS, PRO- CEDURES, STANDARDS AND SCHEDULES AND THE REGULATORY PROVISIONS OF THE UNIFORM CONTROLLED SUBSTANCES ACT AS RECOMMENDED BY THE NATIONAL CONFERENCE OF COMMIS- SIONERS ON UNIFORM STATE LAWS; BY EXCLUDING FROM SUCH SCHEDULES NON-NARCOTIC DRUGS WHICH MAY BE LAWFULLY SOLD OVER THE COUNTER WITHOUT A PRESCRIPTION; BY REPEALING SECTIONS 54-129, 54-130, 54-131 and 66-1504.1, R.C.M.1947; * * * PROVIDING FOR SEVERABILITY IF ANY PART OF THIS ACT IS DETERMINED UNCONSTITUTIONAL; AND REPEALING ALL ACTS AND PARTS OF ACTS IN CONFLICT HERE- WITH."

From its title, it is clear that the 1973 legislation was intended only to amend the existing Dangerous Drug Act and not to create a separate "Controlled Substances Act". The problem here is obviously an oversight on the part of the codifier in making the legislation look like two separate acts in the Revised Codes of Montana. The acts of the codifier cannot change the intent of the legislature. Nor does the adoption of definitions and format from the Uniform Controlled Substances Act make the legislation a separate act from the Montana Dangerous Drug Act.

Therefore, the 1973 drug legislation now codified under sections 54-301 through 54-327, R.C.M. 1947, was intended to amend

and be included as part of the Montana Dangerous Drug Act; the term "dangerous drug" as used in sections 54-132 and 54-133 is defined in section 54-301, R.C.M. 1947.

Relator's second argument is that the federal Controlled Substances Act preempted Montana's Dangerous Drug Act. Relator acknowledges that the federal Controlled Substances Act, 21 U.S.C. §903, reads:

> "No provision of this title shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this title and that State law so that the two cannot consistently stand together."

Relator concedes there was no overall plan to preempt the states in the field of a drug control when Congress enacted the federal Controlled Substances Act. Relator points out however that there is a substantial difference in the penalty for possession of marijuana between the federal Controlled Substances Act and the Montana Dangerous Drug Act. There is a "vast difference" in the penalties provided in the two acts for the sale of dangerous drugs, but the difference is not conflicting in view of the specific inclusion of criminal penalties in the federal statute. Relator argues that one of the stated purposes of the enactment of the federal statute was to provide for an overall balanced scheme of criminal penalties for offenses involving drugs; that the state and federal acts provide such a positive conflict as to penalties that the two cannot stand together; and that, therefore, the federal law preempted the state.

We find no merit to relator's argument. Nowhere is there evidence that the federal act was in any way meant to preempt the state's right to drug control.

In Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L ed 640, 652, the United States Supreme Court set out three tests, two of which are important to our consideration here, to determine whether a federal act has superseded a state act:

"First, '[t]he scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.' * * *

"Second, the federal statutes 'touch a field in which the federal interest is so dominant that the federal system [must] be assumed to preclude enforcement of state laws on the same subject.' * * *

"Third, enforcement of state * * * acts presents a serious danger of conflict with the administration of the federal program."

Applying these standards, it cannot be said the states have no authority to regulate in the field of drugs or narcotics, including the authority to specify the punishment to be imposed.

Furthermore, the Congress made clear, as heretofore quoted, that it did not intend "to occupy the field * * * including criminal penalties, to the exclusion of any State law * * *." (Emphasis added.) Nothing could be more clear.

The petition of relator is denied and this proceeding is dismissed.

_Wesley Castles_
_____
Justice

We Concur:

_James T. Harrison_
_____
Chief Justice

_Frank I. Haswell_
_____

_John Conway Harrison_
_____

_Gene B. Daly_
_____
Justices.

- 5 -