Argued and submitted March 26, 1982, affirmed January 12, reconsideration denied April 1, petition for review denied April 19, 1983 (294 Or 749)

NICHOLS,
*Petitioner,*

*v.*

BOARD OF PHARMACY,
*Respondent.*

(CA A22677)

657 P2d 216

Barry O. Lane, Portland, argued the cause and filed the brief for petitioner.

Christine L. Dickey, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

This is a judicial review under ORS 183.480[1] of a Board of Pharmacy order suspending petitioner's pharmacist license for 14 days. After a hearing,[2] petitioner was found to have filled prescriptions for a medication covered by the Federal Controlled Substances Act, 21 USC § 801 *et seq* (1976), that were written by a practitioner not licensed in Oregon, in violation of former ORS 689.665. The Board suspended petitioner's license pursuant to its authority to discipline licensees. ORS 689.410(1)(c).[3] We affirm.

Petitioner's assignments of error make two attacks on the Board's order. First, he argues that the Board misconstrued former ORS 689.665 and that, even if the Board's construction was correct, former ORS 689.665 conflicted with and was superseded by the Federal Controlled Substances Act. Second, he argues that a factual finding critical to the Board's decision was not supported by substantial evidence. We consider each in turn.

---

[1] ORS 183.480(1) provides:

"Any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order, whether such order is affirmative or negative in form."

[2] This is not the first time petitioner's case has been before this court. The original Notice of Suspension of License was dated February 2, 1980. Petitioner answered and requested a hearing, which was scheduled. Before the hearing, the Board filed a motion for summary judgment. The motion was granted and the hearing cancelled. On appeal, this court remanded the matter to the Board for further agency action. *Nichols v. Board of Pharmacy*, 49 Or App 73, 618 P2d 1003 (1980). On petitioner's request for clarification of the remand order, the court directed the Board to furnish petitioner "an appropriate proper hearing under the APA." The hearing was held, and this appeal followed.

[3] At the time of the alleged statutory violation, ORS 689.410(1)(c) provided, in part:

"The board may suspend, revoke or refuse to renew the license of any pharmacist or pharmacy intern or may suspend or revoke the certificate of a pharmacist:

"* * * * *

"(c) When the pharmacist or pharmacy intern is found to have violated any provision of this chapter or of ORS 453.175, 453.185, 453.605 to 453.745 or of ORS 475.005 to 475.285 and 475.992 to 475.995 or any rule of the board promulgated under those sections or chapters * * *."

Former ORS 689.665[4] provided, in part:

"(1)  A prescription written by a licensed medical practitioner of a state or territory of the United States, other than Oregon, may be filled only if the pharmacist called upon to fill such prescription determines, in the exercise of his professional judgment:

"(a)  That it was issued pursuant to a valid patient-licensed medical practitioner relationship;

"(b)  That it is authentic.

"(2)  However, if the licensed medical practitioner writing the prescription is not known to the pharmacist, the pharmacist shall obtain proof to a reasonable certainty of the validity of the prescription.

"(3)  The authorization contained in this section to fill out-of-state prescriptions does not apply to medications covered by the Federal Controlled Substances Act."

This statute authorized Oregon pharmacists to fill prescriptions written by out-of-state practitioners under certain circumstances. However, that authorization did not apply if the prescription was for a medication covered by the Federal Controlled Substances Act.[5] The Oregon statute, in clear and unequivocal terms, prohibited pharmacists from filling prescriptions for controlled substances written by out-of-state practitioners. Nonetheless, petitioner argues that it should be construed to exempt prescriptions written for controlled substances completely from the operation of former ORS 689.665, so that regulation would be left entirely to federal law. He argues that this construction is necessary, because if the Oregon statute is interpreted otherwise it conflicts with and, thus, is preempted by the Federal Controlled Substances Act. Whether such a conflict exists depends on the provisions of the federal statute.

The Federal Controlled Substances Act provides that those who register with the Attorney General to

---

[4] Substantially the same statute is now codified as ORS 689.525. Unlike its predecessor, ORS 689.525(3) authorizes pharmacists to fill prescriptions written by practitioners in states contiguous to Oregon. With that exception, the discussion in this opinion of former ORS 689.665 applies equally to ORS 689.525.

[5] There is no dispute that the medication at issue was covered by the Federal Controlled Substances Act.

manufacture, distribute or dispense controlled substances are authorized to possess, manufacture, distribute or dispense such substances to the extent authorized by their registration and by other provisions of the chapter. 21 USC § 822 (1976). 21 USC § 903 (1976) provides:

"No provision of this title shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this title and that State law so that the two cannot consistently stand together."

The question is whether the Oregon statute authorizing registered pharmacists to dispense controlled substances only if the prescription is written by a practitioner licensed in Oregon is in "positive conflict" with the federal provision authorizing, in general terms, those pharmacists who are registered with the Attorney General to dispense controlled substances.

Strictly speaking, *any* state regulation that does not coincide precisely with federal law is inconsistent with federal law. However, if Congress intended the Federal Controlled Substances Act to supersede all state regulations that impose limits on controlled substances traffic beyond those found in the federal act, it is difficult to imagine what permissible state regulation it had in mind other than state requirements identical to those in the federal statute. Given the broad authorization in 21 USC § 903 for states to regulate in the area of controlled substances, we do not believe Congress intended that state regulation be valid only if it mimics federal law. The difficult question is at what point state regulation that deviates in some way from the federal law is in "positive conflict" with federal law.

■   The Congressional findings and declaration that preface the Federal Controlled Substances Act indicate that the Act's intended purpose was to regulate and control traffic in controlled substances nationwide. *See* 21 USC § 801. Their sale and distribution is authorized within the limits prescribed in the statute and accompanying regulations. The Oregon statute is an apparent attempt to exert

more control by authorizing pharmacists to dispense controlled substances only on prescriptions by Oregon practitioners. In our view, this is not the type of "positive conflict" to which 21 USC § 903 refers. The Oregon statute does not purport to authorize activity that federal law prohibits. It does prohibit activity permitted by federal law, but the federal law expressly permits additional state regulation. The apparent purpose of the statute is to exert tighter controls on the flow of controlled substances in this state. It imposes limits stricter than those in the federal statute, with the aim of furthering the same purposes intended to be served by the Federal Controlled Substances Act. Because the Oregon statute does not authorize what federal law prohibits, and because the limitation it imposes is consistent with the purpose of the federal statute, we believe that the two statutes can "consistently stand together" within the meaning of 21 USC § 903. The Board did not err in charging petitioner under the act.[6]

Petitioner argues next that the Board's order is not supported by substantial evidence that he actually filled the prescriptions. Former OAR 855-40-075(4)[7] provided:

"Any licensed pharmacist or supervised licensed pharmacy intern who prepares, fills, compounds, dispenses, or otherwise issues drugs upon written or oral direction of a licensed medical practitioner shall endorse upon the prescription or medication order his name or initials and the date of each such occurrence."

---

[6] Petitioner asks us to follow the lead of the Iowa Supreme Court, which interpreted an Iowa statute to authorize Iowa pharmacists to fill prescriptions for controlled substances written by practitioners not licensed in Iowa. *State v. Rasmussen,* 213 NW2d 661 (Iowa 1973). The court believed it was compelled to adopt this construction because to construe the statute otherwise would present a "positive conflict" and would create problems under both the Commerce Clause, Art I, § 8, and the Supremacy Clause, Article VI, of the United States Constitution.

As we have held, there is no plausible way to construe the Oregon statute as authorizing pharmacists to dispense controlled substances on out-of-state prescriptions. For the reasons stated, we do not agree with the Iowa court's assessment that a positive conflict exists in these circumstances. Finally, aside from the alleged conflict with the federal statute, petitioner does not argue that the Oregon statute is not otherwise within the authority of the state to enact. Consequently, we do not reach any potential Commerce Clause issue.

[7] OAR 855-40-075 has since been repealed. Pharmacists are still required to sign prescriptions that they fill. *See* OAR 855-41-065(1)(g).

The rule required a licensed pharmacist to endorse each prescription filled. The Board relied on an inference that licensees have filled the prescriptions they have endorsed for its conclusion that petitioner filled the prescriptions.

■    Petitioner argues that the Board's reliance on that inference is unlawful, because it represents a new policy that must be adopted by rulemaking procedures. Because the new policy was not lawfully adopted, he argues, there is no evidence that petitioner had filled the prescriptions he was charged with filling. The Board characterized the inference that one who endorsed a prescription has filled it as an "ultimate finding of fact." Petitioner describes it as implementation of a Board policy. We do not address the argument, because no policy is necessary to justify the inference. The agency simply extrapolated from its existing rule requiring licensees to endorse prescriptions that they fill the reasonable inference that a licensee did fill prescriptions that he has endorsed. Therefore, the order was supported by substantial evidence that petitioner filled the prescriptions.

Petitioner argues finally that the Board erred with respect to its treatment of evidence that his employer's license had been suspended by the Board for filling other prescriptions written by the same out-of-state practitioner. He assigns error to the Board's failure to rule on his objection after reserving a ruling and to its admitting the immaterial evidence.

■    ▪Although it is obviously not good practice for administrative tribunals to reserve ruling on an objection and then fail to rule on it, the failure did not prejudice petitioner here. We will, however, proceed as if the objection had been overruled and the evidence admitted. Evidence that petitioner's employer had been suspended because of the same series of incidents is not material to petitioner's guilt of the charge. It should have been excluded. However, under ORS 183.450(1),[8] immaterial evidence does not preclude agency action, unless it is shown

---

[8] ORS 183.450(1) provides, in relevant part:

"Irrelevant, immaterial or unduly repetitious evidence shall be excluded but erroneous rulings on evidence shall not preclude agency action on the record unless shown to have substantially prejudiced the rights of a party. * * *"

to have "substantially prejudiced" petitioner's rights. Here, petitioner conceded the initials on the prescriptions were his and that he *may* have filled one, some or all of the prescriptions he was charged with having filled. He stated in effect that he put his initials on some of the prescriptions, because his employer had directed him to do so. Those concessions, along with the Board's inference, provided ample evidence that petitioner had committed acts constituting a violation of the applicable statute. In addition, the Board's findings and conclusions made no reference to the immaterial evidence. Although the Board's opinion observed that petitioner's employer had been suspended for similar violations, it did so by way of explanation of petitioner's conduct, not as a condemnation of it. There is no indication here that the immaterial evidence influenced the Board's decision in any way adverse to petitioner.[9] The final order contains well supported findings and reasoned conclusions that are unrelated to the conduct of petitioner's employer.

Affirmed.

---

[9] The Board's order said:

"Nichols' employer, Guymon, was suspended for two months and placed on probation for two years for violations concerning this same matter. The Board realizes that Nichols was under pressure from his employer. However, there are situations when employers' demands must be refused by an employee. This is one of those situations. Filling prescriptions for controlled substances prescribed by out-of-state physicians is contrary to law. Unlawful use of drugs is a continuing and serious problem which does not need any assistance."