**Salvatore LUNA, Plaintiff,**

v.

**Dr. HARRIS, et al., Defendants.**

**No. CV 84–3563 (RJD).**

United States District Court,
E.D. New York.

Aug. 3, 1987.

Robert J. Baubach, Baldwin, N.Y., for plaintiff.

Martin Bradley Ashare, Hauppauge, N.Y., for defendants.

**MEMORANDUM AND ORDER**

DEARIE, District Judge.

Plaintiff, Salvatore Luna, a patient in the Suffolk County Methadone Treatment Program ("the Program") challenges certain of the Program's regulations on the ground that they are pre-empted by federal regulations governing methadone treatment programs. The Program provides a comprehensive range of treatment procedures and services using methadone for the detoxification and maintenance of narcotic addicts.

Methadone treatment programs in New York are largely governed by regulations promulgated pursuant to the Alcoholism and Substance Abuse Act. N.Y. Mental Hygiene Law §§ 19.01–.19 (McKinney 1978 & Supp.1987). In addition, all state programs are required to comply with federal regulations in this area promulgated pursuant to Section 4 of the Comprehensive Drug Abuse Prevention and Control Act of 1970, P.L. No. 91–513, 84 Stat. 1241 (codified at 42 U.S.C. § 257a).

Plaintiff, initially proceeding *pro se,* instituted an action against the Program for damages and injunctive relief pursuant to 42 U.S.C. § 1983 and the fourteenth amendment to the United States Constitution. After the appointment of counsel, the parties entered into a stipulation which resolved most of the legal and factual issues in the case. The issue now submitted for the Court's decision is whether the New York State regulation governing methadone take-home privileges may impose a

more stringent standard for patient eligibility than its federal counterpart.

The Program has four levels or "stages" of treatment, including methadone take-home privileges beginning with stage II. Stage II allows take-home privileges for the weekend, stage III allows thrice weekly pick-ups, and stage IV allows twice weekly pick-ups. One of the prerequisites for advancement to stages II, III or IV is that the patient be either employed, a full-time student or a housewife with children. A patient who does not advance beyond stage I will be required to pick up methadone daily at the clinic.

Plaintiff is unemployed and thus directly affected by the Program policy that requires employment as a prerequisite to stage advancement. Plaintiff argues that the Program's use of employment as a criterion for take-home privileges is not in conformity with the federal regulations and is therefore pre-empted.

The federal regulations establish three levels of take-home privileges. It is only with respect to the third level that employment is listed as a condition for advancement. Thus, the federal regulations only require employment for advancement to the third level of decreased clinic attendance whereas the Suffolk County Program requires that the patient be employed for *any* take-home privileges.

Defendants argue that the federal regulations establish minimum standards for state programs and do not prevent or pre-empt the states from imposing more stringent standards for stage advancement. Defendants cite several provisions of the federal regulations in support of their argument:

"Treatment programs using methadone shall have been reviewed by the State authority and must conform to all State requirements for conducting a methadone treatment program". 21 C.F.R. § 291.505(c)(5);

It is recommended that each program "establish its own methods" for evaluating applicants and patients and to "establish realistic treatment goals" and to "develop ... appropriate treatment plan[s]". 21 C.F.R. § 291.505(d)(5)(iv)(c);

"It is not the intent of this regulation to prescribe a particular treatment and rehabilitative sevice or the frequency at which a service should be offered". 21 C.F.R. § 291.505(d)(5)(v)(b);

Program medical directors must ensure that their programs are not only in compliance with federal laws and regulations but also "State and local laws and regulations regarding medical treatment of narcotic addiction". 21 C.F.R. § 291.-505(d)(6)(ii).

Defendants argue that the federal regulations in this area make it clear that the federal government has only set minimum standards that the states may adapt to the resources and treatment goals of their local programs. Thus, defendants conclude that the state regulation governing methadone take-home privileges may impose a more stringent standard for patient eligibility than its federal counterpart.

ANALYSIS

The United States Supreme Court has identified three situations in which federal law may pre-empt state law. *Michigan Canners and Freezers Association, Inc. v. Agricultural Marketing and Bargaining Board*, 467 U.S. 461, 469, 104 S.Ct. 2518, 2522, 81 L.Ed.2d 399 (1984). First, in enacting the federal law, Congress may expressly define the extent to which it intends to pre-empt state law. *Id.* Second, Congress may expressly or implicitly indicate an intent to occupy an entire field of regulation. In that event, the states must leave all regulatory activity in that area to the federal government. *Id.*

These two bases of pre-emption do not apply in this case. The federal regulations governing methadone treatment programs contain no pre-emptive language nor do they reflect a Congressional intent to occupy the entire field of drug rehabilitation. On the contrary, the federal regulations indicate that any program "must conform to all State requirements for conducting a methadone treatment program". 21 C.F.R. § 291.505(c)(5). Further, the regulations expressly state that they do not intend "to

prescribe a particular treatment and rehabilitative sevice or the frequency at which a service should be offered." 21 C.F.R. § 291.505(d)(5)(v)(b). Combined with the requirement that each program develop its own treatment plans, 21 C.F.R. § 291.-505(d)(5)(iv)(c), these provisions support defendants' argument that the regulations establish minimum criteria that the states must impose but may certainly exceed.

The third and final basis for pre-emption arises when Congress has not displaced state regulation entirely. In this situation, Congressional enactments may nonetheless override state laws with which they actually conflict. *Michigan Canners and Freezers Association, Inc.*, 467 U.S. at 469, 104 S.Ct. at 2522.

An actual conflict exists when a state statute "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). For instance, the United States Supreme Court invalidated certain New York State laws which excluded recipients of grants from Aid to Families with Dependent Children ("AFDC") from receiving monies from a federally-funded state emergency assistance program because the legislative history of the program clearly indicated that Congress intended AFDC recipients to benefit from it. *Blum v. Bacon*, 457 U.S. 132, 145, 102 S.Ct. 2355, 2363, 72 L.Ed.2d 728 (1982).

Federal regulations have no less preemptive effect than federal statutes. *Id.* at 145–46, 102 S.Ct. at 2363–64. A review of the legislative history of the enabling legislation of the federal regulations indicates that the federal government intended to provide guidelines for the professional community in the United States to clarify "the extent to which they may safely go in treating narcotic addicts as patients." H.R.Rep. No. 1444, 91st Cong., 2d Sess., *reprinted* in 1970 U.S. Code Cong. & Admin.News 4566, 4580. Although Congress was delineating the outer-limits for the approved practice of methadone treatment, there is no indication that it was proscrib-

ing all state regulation within these limits that did not precisely mirror the federal regulations. In this light, defendants' argument is persuasive. Although an actual conflict would arise if the state regulations authorized methadone take-home privileges where federal law prohibited them, such conflict does not arise where the state regulations proscribe activity permitted by the federal regulations.

Similarly, an actual conflict arises when compliance with both federal and state law is impossible. *Michigan Canners and Freezers Association, Inc.*, 467 U.S. at 470, 104 S.Ct. at 2523 (citing *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248 (1963)). The Second Circuit Court of Appeals recently dealt with this situation where compliance with a state labelling scheme for substitute cheese products would render the products misbranded under the federal counterpart. The court held that state statute pre-empted. *Grocery Manufacturers of America, Inc. v. Gerace*, 755 F.2d 993 (2d Cir.), *cert. denied*, 474 U.S. 820, 106 S.Ct. 69, 88 L.Ed.2d 56 (1985).

In the case at bar, patient compliance with the more stringent state standard for methadone take-home privileges does not result in a *de facto* violation of the federal regulation. A United States Supreme Court ruling upholding the legality of the New York Transit Authority's general policy against employing methadone users provides further support for this conclusion. *New York Transit Authority v. Beazer*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979). In dicta, the Court stated that the New York regulations governing the methadone maintenance program involved in the case set the relevant standards for the program because they were more stringent than the federal regulations. *Id.* at 575 n. 8, 99 S.Ct. at 1360 n. 8. In *Beazer*, however, neither the parties nor the Court raised the pre-emption issue.

Defendants argue that further guidance for this Court is provided by a provision of the Comprehensive Drug Abuse Prevention and Control Act of 1970. In Section 708 of

that Act, 21 U.S.C. § 903, Congress expressly stated that it has no intent "to occupy the field" of drug enforcement and control to the exclusion of any otherwise valid state law unless there is a "positive conflict" and the federal law and state law cannot consistently stand together. Although persuasive authority for this Court's determination that the state regulations at issue are not pre-empted, Section 903 does not directly govern the instant dispute. The enabling legislation for the federal methadone regulations, codified at 42 U.S.C. § 257a, is not part of Title II, the sub-chapter of the Act, to which Section 903 applies.

A number of state criminal statutes have withstood federal pre-emption challenges on the basis of Section 903. *See State ex rel. Lance v. District Court,* 168 Mont. 297, 542 P.2d 1211 (1975) (substantial difference in penalty provision for possession between federal controlled substances act and state counterpart is not "positive conflict"); *Wilson v. State of Texas,* 525 S.W.2d 30 (Tex.Cr.App.1975) (harsher penalty provision under state controlled substances act does not prevent state statute and federal counterpart from consistently standing together); *Nichols v. Board of Pharmacy,* 61 Or.App. 274, 657 P.2d 216 (1983) (a state statute imposing stricter controls on sale of prescription drugs is not in "positive conflict" with its federal counterpart).

Finally, both the federal and state regulation governing take-home medication indicate that it is a patient privilege that can be denied, granted or rescinded based on the medical director's authority. *See Harris v. Warde,* 58 A.D.2d 51, 395 N.Y.S.2d 283 (4th Dep't 1977) (state regulation governing clinic visit frequency does not confer right on patient to continue medication pick-up schedule). On this basis, a methadone treatment program can establish the frequency at which certain privileges will be available and the conditions that a patient must meet to enjoy those privileges.

As a review of the federal pre-emption standards indicates, the field of drug rehabilitation is not an area that Congress in-

tended to occupy entirely to the exclusion of state regulation. In addition, the state regulation requiring patient employment as a criterion for any methadone take-home privileges does not result in an actual conflict with the federal regulations. The New York State regulation governing methadone take-home privileges may impose a more stringent standard for patient eligibility than its federal counterpart. Accordingly, plaintiff's pre-emption challenge must fail.

CONCLUSION

Defendants are granted summary judgment on plaintiff's pre-emption claim.

To the extent that the parties have requested the Court to award attorney's fees pursuant to 42 U.S.C. § 1988, the Court has considered those applications and has determined that, under the applicable standard, defendants are not entitled to such an award as prevailing parties in this action. This Court cannot conclude that plaintiff's claims in this lawsuit were, or at any point became, unreasonable, frivolous, meritless or vexatious. Plaintiff's application for attorney's fees is not as easily resolved. The Court is unable to determine on the present record whether and to what extent plaintiff may be considered a prevailing party under Section 1988 with respect to any of issues addressed by the stipulation into which the parties entered in resolution of a substantial portion of this lawsuit. Should plaintiff's counsel wish to proceed with an application under Section 1988, he is directed to submit appropriate papers in support of such application within thirty (30) days of the date hereof. Defendants may respond within fifteen (15) days thereafter.

SO ORDERED.