Salvatore **LUNA**, Plaintiff,

v.

Dr. **HARRIS**, et al., Defendants.

No. CV 84–3563.

United States District Court,
E.D. New York.

July 29, 1988.

Robert J. Raubach, Baldwin, N.Y., for plaintiff.

Bradley Martin Ashare, Hauppauge, N.Y., for defendants.

## MEMORANDUM AND ORDER

DEARIE, District Judge.

### INTRODUCTION AND BACKGROUND

This action was commenced *in propria persona* and *in forma pauperis* by plaintiff, Salvatore Luna, a patient in the Suffolk County Methadone Treatment Program. The complaint challenged certain of the Program's regulations and was filed pursuant to 42 U.S.C. § 1983 and other applicable law. On October 3, 1984, about six weeks after the complaint was filed, Judge Altimari (then of this District Court) granted Luna's request for appointed counsel. Robert J. Raubach, Esq., accepted the appointment on March 12, 1985.

After discovery and lengthy settlement discussions, the parties found they could resolve among themselves nearly all the issues raised by the suit. This was done by a stipulation that the Court approved on April 13, 1987. The stipulation left open two issues: whether federal law pre-empted some of the Program's regulations for advancement to higher stages of methadone maintenance, and whether either party was entitled to recover fees and costs. In *Luna v. Harris*, 666 F.Supp. 33 (E.D.N.Y.1987), this Court held that federal law did not pre-empt the challenged Program rules. In the same opinion, the Court ruled that defendants were not entitled to attorney's fees and directed plaintiff's counsel, if he wished to apply for fees under 42 U.S.C. § 1988, to do so within thirty days.

Within the allotted thirty days, Mr. Raubach filed, on plaintiff's behalf, the motion

presently before the Court. The motion seeks three forms of relief:

First, an award of $1,047.50, an amount equal to estimated out-of-pocket expenses incurred by plaintiff Salvatore Luna in support of the litigation;

Second, an order requiring the Program to return Mr. Luna to Stage III of the Program, purportedly pursuant to the stipulation between the parties; and

Third, enforcement of several terms of the stipulation that require the Program to notify all participants of certain rights they enjoy as members of the Program.

The relief sought will be discussed in reverse order.

## DISCUSSION

### A. Notification to Program Participants.

■ The stipulation (¶ 4) requires that certain of its terms be posted in Program clinics and that the Program's Client Information Booklet inform clients of some of their rights as stated in the stipulation. Mr. Raubach, based on information provided by Mr. Luna, asserted in his moving papers that these requirements were not being met. However, Mr. Raubach's reply affirmation noted partial compliance with the notice requirements and added that "affirmant had a conversation with Edith Rysdyk, Esq., attorney for defendants, who advised your affirmant that her clients have agreed to remedying the [remaining] deficiencies forthwith.... Accordingly, your affirmant expects to advise the Court in the near future that this branch of plaintiff's motion is withdrawn." Plaintiff's Reply Aff. at ¶¶ 4–5.

To date, the Court has received no such advice from counsel, but encourages the parties to reach a mutually satisfactory agreement on the notification issue. However, the Court will rule on plaintiff's requests unless a stipulation indicating that the issue has been resolved is filed within 30 days of the date of this Order. The parties are advised that the Court general-

ly believes that the April 13 stipulation requires the notice demanded by the motion, notably excepting the requests that all Program clients sign a receipt for the Information Booklet and that the text of the stipulation itself be posted in clinics.

### B. Return of Plaintiff to Stage III.

■ Mr. Luna is currently in Stage I of the Program, which requires him to take each dose of methadone at the clinic; unlike clients at higher stages, he is not permitted to pick up and take home several days' doses. Luna asserts that he was placed at Stage I solely because of the results of urine tests. Plaintiff's Aff. at ¶ 11. He claims that the failure to classify him in Stage III violates ¶ 10 of the stipulation, which reads in pertinent part:

[O]nce this lawsuit is finally resolved, Mr. Luna will be permitted to return to Stage III if he meets the minimum standards for that Stage as required by Federal and State laws and regulations and as applied by the Program, consistent with the final determination of the issues raised in this lawsuit.

One of the requirements for Stage II and all higher stages of the Program is that the client be employed, or a full-time student, or a homemaker with children.[1] Program Client Information Booklet at ¶ III, paraphrasing 14 N.Y.C.R.R. § 1040.11(a) (Mental Hygiene). The validity of this requirement was a central issue in this lawsuit. As noted above, plaintiff asserted that the federal regulations, which do not make employment a prerequisite to "take-home" privileges, pre-empted the more stringent state requirements. Plaintiff's contention was rejected by this Court in *Luna, supra.* Thus it is "consistent with the final determination of the issues raised in this lawsuit" for the Program to insist that Mr. Luna secure employment before he is permitted to return to Stage III, because employment is a standard required by state law for that Stage.

---

**1.** The Client Information Booklet specifies "housewife with children." The Court can only assume that the Program would recognize the

increasingly common phenomenon of the "househusband," were it confronted with a *bona fide* case.

Presumably, if Mr. Luna could demonstrate to the Program that he has secured a job, the stipulation would entitle him to enrollment in Stage III. But no suggestion that Mr. Luna is now employed appears in any of the papers supporting his motion. Accordingly, the motion is denied insofar as it seeks an order that would return Mr. Luna to Stage III of the Program.

### C. Award of $1,047.50.

#### 1. The Parties' Submissions

The motion before the Court, as filed by Mr. Raubach, seeks an order that would, *inter alia*, "[a]ward[] Salvatore Luna $1,047.50 in compensation for costs incurred in litigating this action." Plaintiff's Notice of Motion. Mr. Luna's supporting affidavit concludes by repeating this characterization of the monies sought as payments to "reimburse me for expenses incurred in connection with this litigation."

The defendants, in opposition, contend that Mr. Luna is not statutorily entitled to repayment of his out-of-pocket litigation costs. They note that the limited list of taxable costs in 28 U.S.C. § 1920 does not include the types of expenses, such as photocopying, telephone calls, and travel, for which Mr. Luna seeks payment. Furthermore, defendants contend, even if Mr. Luna's request were to be construed as one for attorney's fees under 42 U.S.C. § 1988, he is not entitled to any award.

Section 1988 provides that in civil rights actions "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." Defendants' analysis of this provision is twofold. First, defendants concede that an "attorney's fee" may include litigation expenses, such as travel and telephone costs, that are traceable to a specific lawsuit and are not part of a law office's general overhead. *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir.1983); *Cool v.*

*Police Dep't of Yonkers*, 620 F.Supp. 954, 956 (S.D.N.Y.1985). However, defendants argue, such expenses are taxable to a losing party only in relation to a fee awarded in compensation for the attorney's services. Because Mr. Luna, as a *pro se* litigant who cannot show that the litigation diverted him from other income-producing activities, is not entitled to compensation for his time, defendants assert that he cannot receive a fee-related award of expenses. Second, defendants claim that § 1988 does not enlarge upon § 1920 to authorize the award of litigation costs *qua* costs, because the attorney's fee is made *"part of"* the costs —in effect adding the fee (but not expenses) to § 1920's list of taxable costs. Significantly, defendants do not contest plaintiff's qualifications as a "prevailing party" under § 1988.

In reply to defendants' analysis, Mr. Raubach takes the interesting tack of re-characterizing the nature of the award sought. "[P]laintiff is indeed seeking attorneys' fees," he asserts in his reply affirmation, but Mr. Raubach has chosen to limit his fee to $1,047.50 and "has turned it over to his client ... because plaintiff has personally incurred many out-of-pocket expenses, some at the suggestion" of Mr. Raubach. Plaintiff's Reply Aff. at ¶¶ 6–7. Mr. Raubach then documents his time spent on the case, the value of which, at any reasonable rate, would be much greater than the award requested. In his memorandum of law, he argues that the defendants' concessions in the court-approved stipulation make Mr. Luna a prevailing party and that the attorney is surely entitled to limit his fee to an amount covering the plaintiff's expenses. The unusual request for direct payment to the plaintiff was merely for convenience, says Mr. Raubach, and he would accept payment of the fee, even though he has assigned the right to it to Mr. Luna.[2]

---

**2.** The Court concludes, *infra*, that Mr. Luna is entitled to direct reimbursement for his reasonable and documented litigation expenses. However, even if Mr. Luna's expenses were not taxable directly, the Court would make the same award as a fee to Mr. Luna's counsel pursuant to § 1988. Based on Mr. Raubach's statement

of time spent on the case, Plaintiff's Reply Aff. ¶ 8, he is demanding a fee of just about $25 per hour. Both the number of hours expended and the rate applied are reasonable on their face. *Cf. New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148–53 (2d Cir. 1983); *In re Agent Orange Products Liability*

## 2. Analysis

█ There is no question that 28 U.S.C. § 1920 does not entitle plaintiff to reimbursement of the expenses. However, Mr. Luna is a "prevailing party" under 42 U.S. C. § 1988. Although he did not obtain all the relief sought in the complaint, he did secure, by stipulation, valuable relief for himself and for other participants in the Suffolk County Methadone Treatment Program.[3] As a result of Mr. Luna's suit, clients of the Program have an enforceable right to be informed of their procedural protections against arbitrary Program actions, are protected from termination based solely on urinalysis results, and are protected from retaliation if they file a grievance with the Program. Because these outcomes make Mr. Luna a prevailing party, see *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (attorney's fees may be assessed after settlement by consent decree); *Kopet v. Esquire Realty Co.*, 523 F.2d 1005 (2d Cir.1975) (fees may be predicated on conferral of non-monetary benefits to a group larger than the actual plaintiff), they entitle him, in principle and subject to the Court's discretion, to recover attorney's fees.

The question remains whether Mr. Luna is entitled to recover the particular amounts sought in the present motion, namely reimbursement for his out-of-pocket expenses. The Court holds that he is, subject to the requirements of reasonableness and documentation.

The Second Circuit recently addressed the award of out-of-pocket litigation expenses to *pro se* litigants in *Kuzma v. IRS*, 821 F.2d 930 (2d Cir.1987). Plaintiff Kuzma sought reimbursement for photocopying, postage, supplies, secretarial services, and transportation costs he had incurred in connection with a successful Freedom of Information Act (FOIA) suit, 5 U.S.C. § 552. The Court held that, except for the cost of law books which Kuzma could have obtained from a library, he was entitled to recover his outlays.

Defendants seek to distinguish *Kuzma* by noting that the fee award authorization of FOIA, 5 U.S.C. § 552(a)(4)(E), is broader than Section 1988. FOIA authorizes recovery of "reasonable attorney fees and other litigation costs reasonably incurred ...," rather than "a reasonable attorney's fee as part of the costs." Yet *Kuzma* itself recognized that attorneys' expenses for "[i]dentifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988...." 821 F.2d at 933–34. But, defendants contend, these awards are, in *Kuzma's* language, "linked" to an award of attorney's fees. *Id.* at 934. Here, plaintiff in his *pro se* capacity would not be entitled to fees for services. Defendants argue that there is therefore nothing to which recovery of the litigation expenses can be "linked."

Defendants' pettifogging argument misses the point. As the Court of Appeals recognized:

> The rationale for the rule denying attorney's fees to a *pro se* litigant does not require limiting costs awards to *pro se* litigants to costs recoverable under § 1920. In *Crooker v. United States Department of the Treasury*, we stated that "we do not believe that Congress intended to permit an award of attorney's fees to *pro se* litigants * * * who have made no showing that prosecuting their lawsuits caused them to divert any of their time from income-producing activity." 634 F.2d [48] at 49 [(2nd Cir. 1980)]. By thus refusing to grant an

---

*Litigation*, 611 F.Supp. 1296, 1325–29 (E.D.N.Y. 1985). True, Mr. Raubach has apparently based his fee on the amount of his client's outlays, and has agreed to turn it over to Mr. Luna, because of his "personal ethical views of how he should proceed in a *pro bono* matter." Plaintiff's Reply Aff. ¶ 7. That commendable choice is Mr. Raubach's, and the Court will certainly not use it as a reason to exercise its discretion against the award of fees.

**3.** The plaintiff in this action was originally listed as "Salvatore Luna and all persons similarly situated." Although ¶ 1 of the stipulation specifies that this is not a class action, and that Salvatore Luna is the only plaintiff, the Court, in considering the extent to which Mr. Luna has prevailed, cannot ignore the fact that the benefits gained in the stipulation inure to a large number of Program clients.

attorney's fee we merely recognized that Congress did not provide for reimbursement of a nonexistent expense. Here, Kuzma did spend sums of money for the prosecution of his FOIA action ...

821 F.2d at 934.

Similarly, the sums spent by Mr. Luna are very real. Mr. Luna also, at least before Mr. Raubach's appointment, provided legal services in support of the litigation —for example, drafting and filing the original complaint—that would have generated fees had he been an attorney, or had he been required to forgo other income in order to provide them. The intent of 42 U.S.C. § 1988 is to remove financial barriers to the prosecution of civil rights actions by private individuals. *See Mid–Hudson Legal Servs., Inc. v. G & U, Inc.,* 578 F.2d 34 (2d Cir.1978); *cf. Kuzma,* 821 F.2d at 934 (similar intent underlying FOIA cost-shifting provisions). This Court will not frustrate that intent by denying payment of *bona fide* litigation expenses to a prevailing party simply because he is not entitled to a cash payment for his services.[4]

However, the Court will, as it must, examine the propriety of each requested reimbursement. Defendants argue that Mr. Luna's failure to keep contemporaneous records or provide receipts for most of his expenses compels denial of the motion. *See New York State Ass'n for Retarded Children, supra,* 711 F.2d at 1147.

In Mr. Luna's case, the Court is prepared to relax the documentation requirements somewhat, in light of the facts that Mr. Luna is not an attorney and is, indeed, in a methadone maintenance program. How-

ever, the award of fees is discretionary and the amounts awarded must be reasonable; the Court will not allow recovery of wholly undocumented expenses. Accordingly, the following expense items are allowed: Visits with Mr. Raubach, $37.50 (150 miles @ 25¢ per mile, confirmed by Mr. Raubach's affirmation); Travel to other officials, $245 (980 miles; items 13, 21, 22, 25, 26 [two listings], 27 on list of expenses); Long distance telephone calls, $21 (insufficiently documented but $1 per call inherently reasonable estimate); Registered mail, $46.50 (similarly undocumented but reasonably justified); Urinalysis fees $100 (documented by receipts). The award totals $450.00.

The following expense items are disallowed: Remaining mileage, $228.75 (connection to litigation not established); Local telephone calls, $69 (no evidence of actual cost); Library expenses, $50 (unreasonable amount for xeroxing absent explanation); Tapes, $100 (presumably audio tapes; unreasonable absent showing a special need to record interviews); Other stationery supplies, $100 (unreasonably high); Petty cash, $50 (utterly unjustified). Disallowed expenses total $597.75.[5] The Court will entertain a supplemental application for fees if Mr. Luna can produce local telephone bills showing above-average expenses during the pendency of the litigation and a satisfactory itemization of the library expenses.

## CONCLUSION

Plaintiff's motion, insofar as it seeks an order requiring the Program to place Mr.

---

**4.** The defendants apparently assume that Mr. Luna's expenses were incurred before the action was filed or during the six-week period between filing and appointment of Mr. Raubach. In fact, many of the expenses relate to communication with Mr. Raubach or were made at Mr. Raubach's suggestion, and so clearly were incurred after Mr. Luna was represented by counsel. Mr. Raubach would of course be entitled to reimbursement of these costs had he laid out the money (for instance, by traveling to meet Mr. Luna instead of vice versa).

Moreover, even if litigation expenses must be piggybacked atop fees for legal services, it is the provision of *services,* not the award of *dollars,* that makes the expenses eligible for reimburse-

ment. When Mr. Luna performed legal services in this suit and ultimately prevailed, he became eligible under § 1988 for a fee award comprising

[(appropriate hourly rate × number of hours) + disbursements].

The eligibility for disbursements does not disappear simply because the appropriate hourly rate is zero.

**5.** The astute reader will notice a twenty-five cent discrepancy between the Court's total of expenses allowed and disallowed and Mr. Luna's total claim. The difference results from an addition error in Mr. Luna's list of claimed expenses.

Luna in Stage III of the Program, is denied. The motion for an award of litigation expenses is granted to the extent of an award of four hundred and fifty dollars, payable to Mr. Raubach. In all other respects, decision on the motion is reserved, pending the anticipated agreement of the parties on the outstanding issues.

SO ORDERED.